885

## UNITED STATES v. STRONTIUM PRODUCTS CO. et al.
### Civ. A. No. 620.

District Court, S. D. West Virginia.
Nov. 13, 1946.

Leslie E. Given, U. S. Atty., of Charleston, W. Va., for plaintiff.

Brown, Jackson & Knight, Charles W. Moxley, and Thomas B. Jackson, all of Charleston, W. Va., for defendants.

MOORE, District Judge.

Defendant Strontium Products Company is a partnership composed of the other defendants, with its principal business interest located at South Charleston, West Virginia. It entered into and performed certain war contracts with plaintiff, the United States of America, which were subject to renegotiation. Plaintiff is suing to recover $735,-000, being the amount determined as excess profits for which defendants are liable to the United States for the fiscal year ending December 31, 1943. This determination was made by the Under Secretary of War, pursuant to authority delegated to him by the War Contracts Price Adjustment Board

under the provisions of the Renegotiation Act. 50 U.S.C.A.Appendix, § 1191, Renegotiation Act, § 403. The Board adopted the determination of the Under Secretary of War as its order, and on August 7, 1945, made demand for payment. Defendants dispute the amount of the claim, contending that only $503,358.32 is due plaintiff, and have filed a petition with the Tax Court of the United States for a redetermination.

Plaintiff has moved for judgment on the pleadings.

As originally filed, there were two elements in the pleadings, either of which would have made it improper for the Court to sustain plaintiff's motion. First, it was alleged that one of the partners in Strontium Products Company, J. B. Pierce, Jr., died in January, 1943; and while it was further alleged that the Company continued to operate and transact business as a partnership thereafter throughout the year 1943, there was no sufficient averment that Pierce's executor was a member thereof, and chargeable with its debts. Secondly, the order of the Renegotiation Board determining the amount of excess profits, as well as the notice and demand addressed to the Company pursuant thereto, contained the express provision that the determined amount was subject to the possible credit on account of applicable Federal income and excess profits taxes, the amount of which, as the original complaint states, "will be determined at the appropriate time."

■ An amendment to the complaint has now been filed, whereby it is averred that the executor participated in the continuance of the partnership business during the year 1943, and, by implication that the estate represented by it is chargeable jointly with the other partners with the amount of excess profits due the plaintiff; and also that there was in fact no applicable tax credit to which the determined amount of $735,000 was subject. By an amended answer, defendants admit the first of these allegations, but deny the second. Thus, a material issue of fact is now present in the pleadings, and the Court cannot properly render its judgment until this issue is resolved. However, since the only material dispute between the parties, as set out in their briefs and in oral argument, aside from the question of applicable tax credit, is whether interest should be allowed on the amount fixed by the Board, and if so, what the rate of interest should be, I think it is not improper to state here my views relative to allowance of interest.

Plaintiff contends that interest should be computed at the rate of 6% per annum. Defendants assert: First, that plaintiff is entitled to no interest under any circumstances. Secondly, that if plaintiff is entitled to interest, interest is not recoverable as a matter of right, but recovery thereof depends upon all the facts and circumstances involved in the case, which can be developed only by a hearing. Thirdly, that if plaintiff is entitled to interest, the rate should be established by the Court, and that a fair rate can be fixed only after a hearing.

Since the Act does not expressly make provision for the payment of interest, resort must be had to general principles for a decision of this question. As a preliminary matter, it is necessary to examine the nature of the claim involved. The Renegotiation Act provides as follows:

"(b) * * * the Secretary of each Department is authorized and directed to insert in each contract * * *, a provision under which the contractor agrees—

"(1) to the elimination of excess profits through renegotiation; * * *

"* * * Whether or not there is inserted in a contract with a Department or subcontract, to which subsection (c) is applicable, the provisions specified in this subsection, such contract or subcontract, as the case may be, shall be considered as having been made subject to such subsection in the same manner and to the same extent as if such provisions had been inserted."

All these provisions were contained in the Act as it was in effect throughout the year 1943.

■ In view of the above, I conclude that all war contracts made by defendants with plaintiff during 1943 must be considered as containing the agreement for elimination of excess profits by renegotiation, and therefore that defendants' liability is based upon express contract. See 9 Words

and Phrases 208 et seq., Permanent Edition, Contract. The determination by the Under Secretary of War of the amount of the excess profits, and the subsequent adoption of his order by the War Contracts Price Adjustment Board, created .a debt, which defendants were bound to pay upon demand, notwithstanding the possible existence of a tax credit. The amount of any tax credit may be ascertained by a simple calculation, made pursuant to the internal revenue statutes; and it is a well-recognized principle that interest should be allowed where the amount of the claim can be readily ascertained by mere computation, Abell v. Anderson, 6 Cir., 148 F.2d 372, certiorari denied 326 U.S. 731, 66 S.Ct. 39, 90 L.Ed. ——; Demotte v. Whybrow, 2 Cir., 263 F. 366; 33 C.J. 212, Interest § 73, 47 C.J.S. Interest, § 19, p. 31.

■ It must be noted that this is not a suit between private individuals, but one brought by the Government seeking to recover a debt, ex contractu, from private persons. The allowance of interest in such a situation does not require express statutory authority. Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596. "To such a case, equitable rules relating to interest recoverable in suits for an accounting, or for recovery on quasi-contractual obligations arising from payment of money by mistake, are inapplicable." Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 998, 85 L.Ed. 1361. Allowance of interest at a fair rate from the date of default on the principal sum found to be due is an appropriate measure of damages. Idem. The tenor of the Act clearly reveals a Congressional purpose to effect speedy collection. The provision authorizing review by the Tax Court is specifically limited so as to not operate "to stay the execution of the order of the Board." Various means are provided to speed recovery: by withholding money owed to the contractor, by revision of contracts, by ordering third parties to withhold, by repayment, credit or suit, or by any combination of these methods. Such a statutory policy makes it essential to exact interest from the contractor who refuses to pay, and who retains the use of the money while depriving the Government of its use, so as not to penalize prompt contractors who comply with the letter and spirit of the Act.

Paragraph 626.3 (3) of the Regulations of the War Contracts Price Adjustment Board is as follows: "(3) Interest at the rate of 6% per annum accrues upon the amount determined as excessive profits to be eliminated less the tax credit, if any, from and after the date fixed in the demand for payment. * * *"

■ While this regulation is not binding upon the Court, it is persuasive and worthy of substantial consideration.

■ In the field of Conflict of Laws, authorities can be found applying the rate of interest at the forum, the place of contracting, or the place of performance. In the instant case both the law of the District of Columbia and the law of West Virginia make 6% the legal rate. D.C.Code § 28—2701; W.Va.Code (1943) § 4627. It was only in these two jurisdictions that all the incidents connected with the subject matter of this case took place. While I do not deem these statutes controlling, I find nothing in the pleadings as they stand to warrant the Court in fixing a rate different from the legal rate allowable generally on liquidated debts.

Since the pleadings as amended with reference to the question of tax credit raise a material issue of fact which must be decided before any judgment can be entered, the motion for a judgment on the pleadings must be overruled.

Plaintiff has indicated to the Court through the United States Attorney that it will file a motion for summary judgment, in the event of the Court's overruling its motion for judgment on the pleadings. If this is done, defendants will have the opportunity to present, by affidavit or otherwise, any facts or circumstances which they may think ought to be considered by the Court as affecting the rate of interest to be allowed.