UNITED STATES v. STRONTIUM PROD-
UCTS CO. et al.

Civ. A. No. 620.

District Court, S. D. West Virginia.

April 10, 1947.

Leslie E. Given, U. S. Atty., of Charleston, W. Va., for plaintiff.

Jackson, Kelly, Morrison & Moxley, Thomas B. Jackson and Charles W. Moxley, all of Charleston, W. Va., for defendants.

MOORE, District Judge.

Plaintiff, the United States of America, has filed a motion for summary judgment against the defendants in the amount of $735,000, with interest. A motion for judgment on the pleadings had previously been filed and was overruled by the Court. United States v. Strontium Products Co. et al., D.C., 68 F.Supp. 886. Since the facts sufficiently appear in the opinion cited, it is unnecessary to repeat them here except incidentally where their repetition will aid in the discussion.

Counsel for defendants have directed the Court's attention to two rather formal items in the factual statement contained in the prior opinion which are not in accordance with the actual facts. It seems appropriate to correct those misstatements at this time.

The prior opinion stated that defendant Strontium Products Company had its "principal business interest" at South Charleston, West Virginia. The bill of complaint contains a statement of like import, but it appears that actually the principal manufacturing operation was conducted at Chauncey, Ohio, though the books and records are now at South Charleston.

Defendants by their amended answer admitted that they owed $503,358.32, which is the amount stated in the prior opinion; but a second amended answer filed subsequently to the date of the opinion admits the sum of only $374,547.74. This variation in amount is said by counsel for defendants to have been occasioned by fluctuating computations of tax liability. To keep the record clear the Court will adopt the latter sum as the correct amount admitted, since it can have no bearing on the decision.

Plaintiff's motion for judgment on the pleadings was overruled because of the presence of a material issue of fact regarding the possible existence of a tax credit. Affidavits have now been filed in support of plaintiff's motion for summary judgment which lead the Court to conclude that there is no applicable tax credit.

In the opinion overruling plaintiff's motion for judgment on the pleadings, certain principles relative to the allowance of interest were announced, and it was said by the Court, that, on plaintiff's motion for summary judgment, defendants would have the opportunity to present evidence that might be considered by the Court as affecting the rate of interest, and the amount on which interest should be allowed. Defendants have offered evidence in this connection, which has been carefully considered by the Court.

A letter, defendants' exhibit No. 1, written by defendants' counsel to the Secretary, War Contracts Price Adjustment Board, dated August 17, 1945, contains the following language:

" * * * I am writing to inquire, and will thank you to advise me as promptly as possible, if your Board will accept payment now of $374,547.74, leaving in dispute only the item of $360,452.26. If you are willing to accept payment as stated, without prejudice to any party as to the balance in dispute, I will recommend to the partners that payment be made accordingly."

A reply to this inquiry, written by J. S. Feight, Secretary, War Contracts Price Adjustment Board, dated August 24, 1945, and marked defendants' exhibit No. 2, contains this paragraph:

"With reference to the last paragraph of your letter concerning the proposal to pay the sum of $374,547.74 which you describe as being 'undisputed', you are advised that the respective Secretaries are charged, under subsection (c) (2) of the 1943 Renegotiation Act [50 U.S.C.A.Appendix, § 1191(c) (2)] with the duty of eliminating the amount determined as excessive profits. and there is no provision for payment of any portion of such amount without prejudice. However, Congress has provided in a separate appropriation act for refunds to contractors where the amounts of excessive profits have been redetermined in a lesser amount by the Tax Court. Accordingly, there would appear to be no need for making any payments under protest since the contractor is adequately protected in the event that the Tax Court should reduce the amount of excessive profits."

It has been shown that, at the time of the above correspondence, defendant Strontium Products Company had sufficient cash on hand to make the partial payment. Probably partial payment would have been made had the Government shown a willingness to accept it. It appears that the statement in the letter last above quoted that "there is no provision for payment of any portion of such amount without prejudice" discouraged defendants from parting with their money. How such a partial payment would have prejudiced defendants' rights as to the balance claimed is not made clear.

I do not believe the letter of August 24, 1945, amounted to an absolute refusal to accept partial payment. If it is to be so interpreted, the situation is not changed. The Secretaries of the various Departments concerned with renegotiating contracts were charged with the duty of collecting the full amount of excessive profits. No legal or moral obligation required any exception to be made in this case.

Defendants' counsel made a statement, which was given the force of testimony, concerning a telephone conversation of about March 6, 1946, with "Major Cox or Major Sullivan or somebody over there," which dealt with the possibility of paying everything claimed by the Government. Defendants' purpose was to determine whether a full payment could be made without prejudice, and whether they could be assured recovery of any amount the Tax Court might determine they did not owe. No assurance was given that defendants would be protected. Counsel made no attempt to state the conversation in its entirety, and it is not possible to determine from the evidence its full import; but it is clear that defendants were fully aware of the Deficiency Appropriation Act of 1945, 59 Stat. 90, in which Congress appropriated $15,000,000 to repay to contractors amounts collected from them in excess of the amounts finally fixed by the Tax Court, in cases appealed to that tribunal. It must be conceded that there is some possibility that the amount appropriated might be insufficient to meet all claims, and it is also conceivable that the appropriation might not be extended to later years; but such contingencies are so remote that they are entitled to little weight. As Government counsel has pointed out, a similar risk inheres in any Government bond. Defendants admit that no formal tender has ever been made and the Court is of opinion that none of the negotiations inter partes raise sufficient equities to stop the running of interest.

As to the rate of interest, defendants insist that since the Act provides for payment of interest on refunds at a rate not in excess of four per cent, it would be inequitable to exact interest from defendants at a greater rate. The fact that interest rates vary according to a borrower's financial standing is a proper subject of judicial notice. Banks are quite willing to loan money to the Government at a lower rate than that which they would consider a proper rate for the ordinary commercial borrower. Four per cent has long been considered an ample rate of interest on a Government obligation; but even in these days of cheap money, the accepted and legal commercial rate for the use of money is six per cent. The fact that defendants kept in their bank account a large amount of money, enough to have paid the sum which they admitted they owed, cannot excuse them from paying interest on that amount, along with the remainder. The money was in their control, and they could have used it for their own purposes. In my opinion, to fix any other rate of interest than six per cent would be an abuse of discretion on the part of the Court, and might encourage others to be slow in paying Government assessments or awards. Therefore, the rate of interest in this case will be fixed at six per cent.

Defendants contend that in any judgment entered herein the amount determined should be proportioned severally among the defendants. They say that the affidavits filed in support of the motion for summary judgment show the defendants to be severally liable and not jointly, because they state the liability of each individual defendant "as his pro rata share of the excessive profits." These affidavits, however, refer to the question of tax credit, in which the income tax of the individual defendants is a determining factor. See 26 U.S.C.A. Int.Rev.Code, § 181, which provides as follows: "Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity."

The affidavits cannot be regarded as admissions of the Government that the liability here is several and not joint, because they relate only to taxes, and have no application in determining the extent of individual liability of the firm members for excessive profits of the partnership. In such cases the liability of partners is joint and several, and each individual partner is liable to pay the whole. Roberts v. Toney, 100 W.Va. 688, 131 S.E. 552; Courson et al. v. Parker et al., 39 W.Va. 521, 20 S.E. 583.

Plaintiff's motion for a summary judgment is granted against defendant Strontium Products Company, a partnership, and against each individual defendant, jointly and severally for the sum of $735,000, with interest from August 7, 1945, until paid, at the rate of six per cent per annum with costs.