**VOKAL et al. v. UNITED STATES.**

No. 12209.

United States Court of Appeals
Ninth Circuit.

Nov. 3, 1949.

R. B. Sammons, Frank C. Shoemaker, Los Angeles, Cal., for appellants.

James M. Carter, U. S. Atty., Ernest A. Tolin, Chief Asst. U. S. Atty., Clyde C. Downing and Bernard B. Laven, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Paul F. Vokal and his wife Freda M. Vokal (by virtue of the Community Property Laws of the State of California) owned and operated a tool and machinery business in Los Angeles, California. During 1943 they manufactured certain tools and machinery under government contracts and subcontracts. On December 19, 1944 they entered into a formal renegotiation agreement with the War Contracts Price Adjustment Board, pursuant to the Renegotiation Act [1], by virtue of which it was deter-

---

[1]. Apr. 28, 1942, c. 247, Title IV, § 403, 56 Stat. 245, as amended Oct. 21, 1942, c. 619, Title VIII, § 801 (a–c), 56 Stat. 982; July 1, 1943, c. 185, § 1, 57 Stat. 348; July 14, 1943, c. 239, §§ 1–4, 57 Stat. 564; Feb. 25, 1944, c. 63, Title VII, § 701 (b), 58 Stat. 78, 50 U.S.C.A. Appendix, § 1191. The Renegotiation Act will hereinafter be referred to as "The Act," and the War Contracts Price Adjustment Board will be called "The Board."

mined and agreed that $38,442.26 of the profits received or accrued by the Vokals under contracts or subcontracts during 1943 should be eliminated, and that this amount, less tax credits, if any, would be paid by the Vokals to the Treasurer of the United States. On July 13, 1945, $11,136 of this amount was paid under protest, but no further payments were made. Thereafter the Secretary of War, pursuant to subsection (c) (2) (C) of the Act, directed certain prime contractors to withhold for the account of the United States certain amounts otherwise due Vokal. The aggregate of the amounts so withheld equals the amount due under the renegotiation agreement (plus interest) less the amount paid, as above indicated, and less a tax credit allowed.

Thereafter Vokal filed actions in the courts of the State of California against certain of the prime contractors to recover the sums so withheld. On December 18, 1946, the United States filed this action against Paul and Freda Vokal in the district court below. The complaint alleged the foregoing facts in detail and asked for a declaratory judgment adjudging the renegotiation agreement to be valid, that the defendants have no interest in the amounts withheld, and that they be restrained from further prosecuting the said suits against the prime contractors then pending in the courts of California.

Defendants' answer admitted in substance, except as hereinafter noted, the allegations of the complaint but tendered six affirmative defenses which may be summarized as follows: 1. The renegotiation agreement is void by reason of false, fraudulent and willful misrepresentations made by the Board and its agents which induced defendants to execute the agreement, and for the further reasons that defendants were not subject to the Act, and the Board exceeded its jurisdiction. 2. Plaintiff is indebted to defendants in the amount of $14,662.83 (the amounts withheld by the prime contractors) plus interest. 3. Certain provisions of the agreement and of the Act (concerning the finality of the agreement) are contrary to public policy and to the Constitution of the United States, Article III, sections 1 and 2. 4. Plaintiff has no right to retain the $11,136 heretofore paid it by defendants and is indebted to defendants in that amount. 5. The Board and plaintiff are bound by the Bureau of Internal Revenue's determination of defendants' income. 6. The Board exceeded its statutory power and jurisdiction in making the agreement and so the agreement was a nullity. Defendants sought a declaratory judgment in harmony with their affirmative defenses.

Paul F. Vokal died on June 28, 1948 and the court ordered that his executors be substituted as parties defendants herein.

Upon motion of plaintiff and over objections of defendants, the trial court (without hearing evidence) made findings of fact and conclusions of law and, pursuant to Rule 56, Federal Rules of Civil Proc., 28 U.S.C.A. entered a summary judgment for plaintiff and against defendants, wherein plaintiff was granted the relief prayed for in its complaint. This appeal followed.

■ The primary questions on this appeal are whether or not the pleadings presented any genuine issues as to material facts, and whether or not any of the defenses pleaded were sufficient as a matter of law. The record does not disclose that any affidavits were presented either in support of or in opposition to the motion for summary judgment. Therefore, we accept as true the factual allegations in defendants' affirmative defenses to determine whether the trial court was justified in finding that they were insufficient as a matter of law.

■ The purpose of Congress in enacting the Renegotiation Act was to prevent and eliminate excessive war profits without impairing the efficiency of our industrial war machine, see Lichter v. United States, infra, footnote 2. Subsection (c) of the Act authorizes the Board to determine by means of renegotiation proceedings the amount of excess profits received or accrued on war contracts and subcontracts. This "determination" may be accomplished by either of two methods, the first being by means of a written agreement or contract between the Board and the contractor.

If the parties are unable to reach such an agreement, the determination may then be made by means of a unilateral order of the Board. If resort is had to the latter method the contractor may petition the Tax Court for review of the Board's order within 90 days from the time a copy of the order is mailed to him. The Tax Court is thereupon vested with exclusive jurisdiction to review, by means of a proceeding de novo, the Board's order. In the event that no petition for review of the Board's order is filed within the prescribed time, the order becomes final and is not subject to review or redetermination by any court or agency.

The Supreme Court has upheld the constitutionality of this statutory procedure providing for exclusive review in the Tax Court.[2] Had the determination of appellants' excessive profits been made by an order of the Board, their failure to seek a redetermination in the Tax Court would have foreclosed any right to attack the validity of the order. In this case the determination was made by means of a formal written agreement entered into between the Board and appellants. The Act makes no provision for administrative review of such an agreement. To the contrary, it provides, "Any such agreement shall be conclusive according to its terms; and except upon a showing of fraud or malfeasance or a willful misrepresentation of a material fact, (A) such agreement shall not for the purposes of this section be reopened as to the matters agreed upon, and shall not be modified by any officer, employee, or agent of the United States, and (B) such agreement and any determination made in accordance therewith shall not be annulled, modified, set aside, or disregarded in any suit, action, or proceeding." Subsection (c) (4).

Appellants assail the validity and constitutionality of the section of the immediately above quoted act (and of a similar provision contained in the agreement) on the ground that it abridges the constitutional jurisdiction of the Courts of the United States, and deprives appellants of their property without due process of law. We reject this contention. By voluntarily entering into the agreement, appellants chose to waive their right to review or to question the conclusiveness of the agreement except (according to the terms of the statute) upon a showing of fraud, malfeasance or willful misrepresentation of a material fact.

As indicated above, the Supreme Court has upheld the constitutionality of that paragraph of the Act, (c) (1), which accords finality (in the absence of an appeal to the Tax Court) to a determination of excessive profits made by an order of the Board. We think that paragraph (c) (4), which accords similar finality to a determination reached by a voluntary agreement between the parties, is equally valid and binding on appellants. Statutes providing for the amicable settlement of controversies and for the consequent reduction of litigation are to be encouraged. Therefore, the trial court's ruling that appellants' last five affirmative defenses were insufficient was correct.

The only defense which we need here consider is the first, which appellants contend sufficiently alleges fraud or misrepresentation of such character as to make the agreement void and unenforceable. We reproduce in the margin those paragraphs of the answer which appellants urge are sufficient allegations of fraud.[3] The trial court determined, "That the defendants have not pleaded or offered to prove any

---

2. 3 cases, Lichter v. United States, Pownall v. United States, Alexander Wool Combing Co. v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, rehearing denied 335 U.S. 836, 837, 69 S. Ct. 11.

3. "II. That between April 15, 1944, and December 20, 1944, the Price Adjustment Section, Headquarters, Western District, Air Technical Service Command, local representatives of the War Contracts Price Adjustment Board, which latter was the agent of the plaintiff with respect to the matters hereinafter set forth; and which Board purported to be functioning and proceeding pursuant to and in compliance with the law and the Renegotiation Act of 1943, which was applicable to defendants as their fiscal year ended after June 30,

fraud or malfeasance or willful misrepresentation inducing the execution of the contract." It struck appellants' first affirmative defense (and others) upon its own motion, under Rule 12(f) of the Rules of Civil Procedure, as being insufficient as a matter of law.

The record indicates that the government made no reply to the answer and did not support its motion for summary judgment by way of affidavit or otherwise. Therefore we must (accepting as true appellants' allegations of facts) determine whether or not the paragraphs quoted

1943. That during said period of time said Board, its officers, agents and servants hereinafter termed the Board, in its said capacity, as agent for the plaintiff, for purpose of inducing the defendants to enter into and execute said agreement of December 19, 1944, falsely and by fraud or malfeasance, or by willful misrepresentations, stated and represented to the defendants as follows, to-wit:

"That defendants' gross receipts for the fiscal year 1943, subject to renegotiation under said Renegotiation Act of 1943, were $538,442; that defendants' profits received or accrued therefrom and subject to said Act were $156,055.-59; that the sum of $38,442.26 were excessive profits and subject to recapture pursuant to said Act; that the net amount actually to be recaptured from defendants after offsetting tax credits would be negligible in amount; that the computations and findings of said Board would be ratified and confirmed by the Bureau of Internal Revenue in its adjustment of defendants' income tax liabilities, and that said Bureau would adjust and determine defendants' gross receipts and profits received or accrued in the same amount as found by said Board; that said Board was not bound by the computations and conclusions of said Bureau in determining defendants' tax liabilities; that defendants had received or accrued gross receipts from renegotiable contracts for said fiscal year in excess of $500,000; that defendants were subject to said Act of 1943; that defendants had received or accrued excessive profits for said fiscal year within the purview and intent of said Act; that defendants had received or accrued profits during said fiscal year which were subject to said Act, were within the scope of the powers and jurisdiction of said Board, and that certain portions thereof were subject to recapture by said Board; that defendants were not entitled to the credit for and deduction from their gross receipts of the sum of $22,888.88 expended and disbursed by them during 1943 as ordinary and necessary expenses of the business; that said Board had the power to arbitrarily add the sum of $47,871.41 to defendants' net income for such fiscal year 1943; that said Board had the authority to include the gross sales price of certain work in process in defendants' income for 1943, which aggregated the sum of $45,162.58, even though such work in process represented items of certain unfinished and uncompleted contracts which were neither due, nor payable or collectable by defendants, nor lawfully accrued during said year 1943; that said Board had the right and power to disallow to defendants the amount of $39,799.04 as the beginning inventory and other adjustments of defendants and to add said amount to the net income of defendants; that said Board had the power and authority to arbitrarily add the total sum of $84,993.83 (less the Board's adjustment of $37,122.46) to defendants' net income; that said Board had the power and authority to increase defendants' true net income of $108,184.-18 to the sum of $156,055.59, an arbitrary increase of $47,871.41; that offsetting tax credits of $13,001.22 allowable under section 3806(b) of the Internal Revenue Code [26 U.S.C.A. § 3806(b)] were the maximum amount to which defendants were entitled; that said offsetting tax credits could be lawfully computed and applied by said Board on an entirely different method and basis from that followed by the Bureau of Internal Revenue in computing defendants' income tax liabilities; that notwithstanding the provisions of section 403 (i) (1) (D) of said Act of 1943, the same applied to the contracts and transactions had by defendants with California Institute of Technology, a corporation and one of defendants' vendees, and that said Board had the power and authority to include in defendants' profits received or accrued and subject to renegotiation the sum of $3,624.84 theretofore paid defendants by said Institute; that said Act of 1943 applied to certain other purchase orders, contracts, and transactions aggregating in amount $65,576.50 received by defendants during said year 1943 from divers vendees, notwithstanding that the same were neither purchased by nor for the plaintiff, its Departments, agencies, servants, or for the end-use thereof, and no part of which were subject to renegotiation.

624

above (footnote 3) sufficiently alleged fraud or misrepresentation. This case was submitted to us on the briefs without oral argument. None of the briefs contain helpful arguments or authorities concerning this particular question.

■ An analysis of the paragraphs in question shows that the material representations of fact alleged to have been falsely made by the Board or its agents concern in essence the amounts of appellants' expenses, receipts, profits and excessive profits subject to renegotiation. Even the allegations concerning the jurisdiction of the Board concern in fact the amount of appellants' receipts, for a reading of the entire answer shows that the contentions that the Board had no jurisdiction or power to enter into the contract, rest upon appellants' allegations that the amount of their gross receipts received from renegotiable contracts was less than $500,-000, thus making them exempt from the provisions of the Act, under paragraph (c) (6). This contention, therefore, relates to "coverage." The Board had the power and jurisdiction to determine this question.[4]

We are at a loss to understand how any business man, who presumably knows his own affairs better than any other person or agency, could be misled by misrepresentations concerning the amount of receipts, expenses and profits of his own business. Appellants assert that the Board should have known that the statements it made were false and that its computations were incorrect because the Board had several times made audits of appellants' books and accounts. We think that appellants must have had a knowledge of their own accounts at least equal to that of the Board, and when the Board's computations and statements differed from their own, should have suspected the falsity of the representations made by the Board if in fact they were false. A reasonable person placed in appellants' position would certainly have investigated the truth of the representations before voluntarily signing the agreement and thereby waiving statutory procedure for redetermination of liability.

■ Nevetheless appellants allege that they believed the representations made by

"III. That said statements and representations so made by said Board were wholly false and untrue. That said Board made such statements and representations as of their own personal knowledge for the purpose of inducing defendants to act thereon and to execute said agreement with plaintiff, with the intent defendants would believe that such statements and representations were made on the Board's personal knowledge; that said Board assumed and intended and did convey to defendants the impression that they had actual knowledge of the matters so stated; that such statements and representations were so made by said Board without having knowledge whether they were true or false, and having no reasonable grounds to believe them to be true, or were conscious that they had no such knowledge, or were informed or knew of facts and circumstances sufficient to cause them to suspect the falsity thereof which facts and circumstances were unknown to defendants, or were made by said Board with reckless disregard of the injury which might thereby be caused to defendants; that the same were either known to be false when made or the

Board should have known the same to be false; that the truth, if known to said Board, was concealed and suppressed from these defendants; that defendants believed said statements and representations so made by said Board, and relied and acted thereon and signed said agreement to their great loss and damage as herein appears; that defendants had no part in the preparation of said agreement, were not consulted in its drafting or regarding its contents, and were given no alternative except to sign the same or face a unilateral order fixing their alleged excessive profits."

It will be noted that at the conclusion of paragraph 3 (above quoted) appellants neglected to add that they would have been entitled to a de novo redetermination (in the Tax Court) of the amount of the claimed excessive profits had they refused to sign the agreement here in issue and elected to face a unilateral Board order.

4. See Pownall v. United States, 9 Cir., 159 F.2d 73, affirmed 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694; Macauley v. Waterman S.S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839.

the Board and relied thereon and in consequence signed the agreement. We are of the opinion that, considering all the facts and circumstances, appellants had no reasonable right to rely upon the form of representations here alleged.[5] In this respect appellants allege "that the truth, if known to the Board, was concealed and suppressed from these defendants." This allegation is entirely inconsistent with the other allegation that the Board should have known the truth because it had examined appellants' books and accounts. The truth of the matters alleged to have been misrepresented was contained in appellants' books and in the various statutes and regulations concerning renegotiation of war contracts. Appellants do not attempt to assert that either of these sources of information were concealed from them by the Board. Appellants must be presumed to possess the information which is available to them by recourse to their own books of account and to the statutes. Both parties to a contract are presumed to know the law in respect to which the contract is made. There is no presumption of ignorance on one side and knowledge on the other. Mutual Life Ins. Co. v. Phinney, 178 U.S. 327, 342, 20 S.Ct. 906, 44 L.Ed. 1088.

We are aware that the members of the Board and its agents may have been considerably more cognizant of their statutory powers and duties than were appellants. However, a business man running a business of the magnitude and character that Vokal's was, is not exactly helpless before government officials however omnipotent and mysterious their powers might seem to laymen. It is not alleged that Vokal was incompetent or an infant. We think that it is not improper for the court to take judicial notice that business men can and usually do secure the aid and advice of accountants and counsel when technical questions of the type here involved arise.

In another part of their answer appellants allege that at the time they signed the agreement the reason they did not know that they were not subject to the Act arose from the fact that they did not receive a "statement of facts and reasons" for the determination until several months after the agreement had been signed. Paragraph (c) (1) of the Act gave them the right to request and thereby receive such a statement from the Board before they entered into the agreement. Had they made such a request they would have presumably learned of the alleged false basis for the determination. Failure of appellants to take advantage of this statutory right to information which would have exposed the alleged falsity of the prior representations is another circumstance which convinces us that appellants had no reasonable right to rely on the Board's alleged statements.

We therefore conclude that the trial court was correct in ruling that the defense of fraud and misrepresentation, as pleaded, was insufficient as a matter of law. Although the "right to rely" on the misrepresentations need not be pleaded affirmatively, if all the circumstances show that the person asserting the fraud had no right to rely on the misrepresentations, the pleading is defective, c. f. 24 Am.Jur. p. 79.

One other question remains to be considered. Paragraph (c) (2) of the Act provides that the Secretary shall (in collecting from the contractor the amount of profits which have been determined by order or agreement to be excessive) allow the contractor credit for Federal income and excess profits taxes as provided in section 3806 of the Internal Revenue Code. The amount of such tax credits is not computed in the determination of excessive profits, but, under the provisions of 26 U.S.C.A. § 3806, the tax credits are allowed in mitigation of the effect of renegotiation of war contracts.

---

5. The general rule, as stated in 17 C.J.S., Contracts, § 163, page 515, is that, "To avoid a contract for false representations, one must have the right to rely thereon, and whether or not he has such right will depend on all the circumstances, including the form of the representation and the relations and respective knowledge of the contracting parties."

Paragraph three of the renegotiation agreement here in dispute provided that the amount of such tax credits, if any, when computed, would be allowed as a credit against the amount of profits agreed to be eliminated. In its complaint the government alleged that the tax credit to which appellants were entitled under the provisions of § 3806 of the Internal Revenue Code was in the amount of $13,001.22. This allegation was denied by appellants in their answer.

The trial court found that the amount of tax credits was the amount alleged by the government. The record does not disclose any basis for the trial court's determination of this controverted issue. The determination of this fact is material to the case for the reason that if it appears that appellants are entitled to a larger amount of tax credits, the withheld accounts might exceed the net amount due to the government.

On this record, and for the reasons we have indicated, we think that the amount of tax credits to which appellants were entitled was the only material fact in controversy. The trial court should have directed such further proceedings in the action as were just for the determination of this issue, in accordance with Rule 56(d), Rules of Civil Procedure. We are of the opinion that this determination could properly have been made either from evidence presented to the court or from affidavits disposing of the issue to the satisfaction of the court. See United States v. Strontium Products Co., D.C., 68 F.Supp. 886; Id., D.C., 71 F.Supp. 475, 476.

The summary judgment appealed from is modified as follows: Paragraph A, adjudging that the renegotiation agreement is valid, is affirmed. Paragraphs B and C, adjudging that appellants have no interest in or right to recover the amounts withheld, are vacated pending further proceedings in accordance with the views herein expressed. Paragraph D, permanently restraining appellants from prosecuting certain named actions pending in the courts of the State of California, is modified to temporarily restrain appellants from prosecuting the said suits pending further proceedings for final determination of this ac-

tion in accordance with the views herein expressed. The case is remanded to the district court with directions to entertain further proceedings for the determination of the amount of tax credits to which appellants are entitled and for entry of judgment in accordance with such determination.