## COOMBS v. UNITED STATES.

### No. 46102.

Court of Claims.
June 3, 1946.

Max L. Rosenstein, of Newark, N. J., for plaintiff.

E. E. Ellison, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (Kendall M. Barnes, of New York City, on the brief), for defendant.

Before WHALEY, Chief Justice, and JONES, WHITAKER, LITTLETON, and MADDEN, Judges.

WHALEY, Chief Justice.

The Spier Aircraft Corporation was organized in 1941. It never did engage in the manufacture of complete aircraft, as its name might indicate, and its management had had no real experience in such manufacture. In October 1941 it leased a building in Jersey City for two years, and adapted and fitted it out for an airplane part factory building. The corporation then proceeded to manufacture small precision aircraft parts on a subcontract basis.

The corporation started out with the use of light machine tools and thereafter gradually acquired heavy machine tools such as lathes, screw machines, grinders and drill presses. In time it had assembled and installed a set of machines, tools and other facilities sufficient for a factory. The cost price of this complete outfit was $170,594.05. This cost price did not include the expense of installation, as to which there is no evidence justifying a finding even as to an approximate amount. We may assume that installation had its price, but there must be some basis for the approximation.

Operations were short-lived. Involuntary proceedings in bankruptcy were insti-tuted January 22, 1943, and plaintiff Coombs was appointed receiver January 23, 1943. He was authorized to continue the business for the time being, completing certain contract work, and operations ceased February 7, 1943. The corporation was adjudicated a bankrupt February 9, 1943, and on March 23, 1943, the plaintiff was appointed trustee in bankruptcy.

Institution of the bankrupt proceedings received some publicity, for hardly had the receiver been appointed when he was approached by various parties, both Government and commercial, seeking acquisition of the plant or its equipment.

But the prospective purchasers were confronted, or thought they were confronted, with ceiling prices established by the Office of Price Administration. Whether such prices were operative in a judicial sale we need not determine.

March 6, 1943, the Navy Department requisitioned the greater part of the machine tools and equipment.

March 9, 1943, the referee in bankruptcy, doubting the authority of the Navy Department so to requisition, announced his intention to offer the property for sale only as a going concern. Bids were received ranging from $145,000 to $165,000.

The Navy Department was restrained from removing the requisitioned property, but the restraining order was dissolved March 18, 1943.

Except for some miscellaneous material and equipment and the unexpired portion of the lease on the premises, later disposed of for $3,628.45, the Navy Department requisitioned the remainder of the tools and equipment April 6, 1943.

The two requisitions were close together, what was left was insignificant in amount, and the requisitions will be considered (1) as one requisition, and (2) as a requisition of plaintiff's entire outfit. It is not to be taken as a situation where the seizure of a part led to diminution in value of the remainder. The remainder, sold for $3,628.45, is treated in argument as inconsiderable, is conceded as an offset in valuation of the whole, and it will be so regarded.

Thereafter the plaintiff filed claim with the defendant for compensation for the takings, and December 18, 1943, the defendant made an award of $133,850.54, comprised of a valuation of $129,829.05, and $4,021.49 to compensate for delay in payment. The delay item was interest at the rate of four percent per annum.

This did not satisfy the plaintiff, and pursuant to the Act of October 16, 1941, 55 Stat. 742, as amended, 50 U.S.C.A.Appendix, § 721 et seq., he was paid fifty percent, or $66,925.26.

In arriving at the amount of just compensation the defendant limited itself to supposed ceiling prices established by the Office of Price Administration, for the separate articles taken.

The ceiling prices set by the OPA had nothing to do with a valuation that might be set on them as inseparable parts of a manufacturing organization, nor were these ceiling prices set by the OPA as just compensation. Manifestly, the OPA was not authorized to determine just compensation for anyone, nor, so far as we are informed, has that office undertaken to do so. See Walker v. United States, 64 F.Supp. 135, 105 Ct.Cl. ——.

Recovery of just compensation is conceded. The question for determination is the amount thereof and the question of amount involves the basis for the determination of that amount.

Certain questions introductory to the one that must here be decided are propounded and discussed in the briefs. The answers to them are fairly well recognized and we therefore proceed to consider what we think more directly determines this case.

In Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, the thing taken was a tract of land that was being used "in the business of growing and canning corn of a special grade and quality." The Supreme Court held that just compensation therefor could not include consequential damages for losses to the business or for its destruction.

■ But, the Court said (and this is important): "The special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain. Boom Co. v. Patterson, 98 U.S. 403, 408, [25 L.Ed. 206; City of] New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L. Ed. 143. Doubtless such special value of the plaintiffs' land was duly considered by the President in fixing the amount to be paid therefor."

■ The Spier Aircraft Corporation had assembled tools and equipment and leased a building, all of which as a unit was especially suited and adapted to the making of certain airplane parts. This constituted a factory. The defendant, in awarding compensation, proceeded as though the articles comprising the factory did not in fact comprise a factory, but were isolated in storage, each article separate and distinct from the others. But when they were requisitioned they were not separate and distinct, but constituted a factory, especially adapted for the manufacture of airplane parts, and as so adapted, arranged, interrelated, and organized had a special value.

The situation may be aptly compared to a dwelling-house. A structure functions as a dwelling-house where its equipment is adapted to the uses of a dweller therein. The cook-stove, refrigerator, furnace, radiators, toilets, lighting fixtures, cannot be torn out and their values as articles thus segregated be the same as when they functioned to make a place of habitation.

■ According a business value to plaintiff's manufacturing equipment as just compensation is not allowing consequential damages for business loss or destruction. This is the important distinction made in the Mitchell case and controls here. The plaintiff expressly disavows any claim for consequential damages and, in fixing the amount of just compensation, we allow none.

■ But the amount of just compensation is not to be determined by the value to the plaintiff " * * * the compensation to be paid is the value of the interest taken. Only in the sense that he is to receive such value is it true that the owner

must be put in as good position pecuniarily as if his property had not been taken." United States v. General Motors Corp., 323 U.S. 373, 379, 65 S.Ct. 357, 360, 89 L. Ed. 311, 156 A.L.R. 390.

That is to say, market value, so-called, may not be exceeded even though the thing taken was worth more to the condemnee. And the compensation is not to be limited to what the taker, the Government, gained. Boston Chamber of Commerce v. Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 54 L.Ed. 725. The Government may not, by dismantling or tearing a factory to pieces, lessen its liability for just compensation to the valuation of those pieces, as separated articles, when their value as an organic whole, as the plaintiff or his predecessor in interest had constituted them, was higher.

The bids received when the factory was put up for sale indicate a much higher value than has been used in the award to the plaintiff. The lowest bid exceeded the sum of the award and the small amount received for the residue left after requisition.

There appears to have been a lively interest in the offer of the factory for sale. The plaintiff argues that the bidding was "chilled" by the pending Navy Department requisition. But all manufacturing equipment was subject to Federal requisition and the bids in this instance were not to be accepted until the District Court had considered the matter. The bidders knew that they were amply protected.

■ We find that the plaintiff is entitled to compensation in the basic sum of $165,000, which, but for the requisition, he could have gotten in the open market, less the sum of $3,628.45 obtained by the plaintiff for the property remaining after requisition, a net sum of $161,371.55.

On this amount, $161,371.55, plaintiff is to be allowed. in order to afford him compensation that is just, four percent per annum from April 1, 1943, approximately the effective date of the requisitions, to December 18, 1943, date of the award, a percentage amounting to $4,615.58, an aggregate of $165,987.13.

This aggregate was satisfied to the extent of $66,925.26 December 18, 1943, leaving an unpaid balance of $98,467.78 principal and $594.09 interest, total $99,061.87.

Plaintiff is entitled to recover $99,061.-87 and in addition thereto four percent per annum, as a part of just compensation, on the principal sum of $98,467.78 from December 18, 1943, to the date of payment of the judgment.

It is so ordered, and judgment will be entered accordingly.

JONES, WHITAKER, and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.