JOHN J. FELIN & CO., Inc., v. UNITED STATES.

No. 45892.

Court of Claims.

Oct. 7, 1946.

Arthur L. Winn, Jr., of Washington, D. C. (Wilbur LaRoe, Jr., and Frederick E. Brown, both of Washington, D. C., on the brief), for plaintiff.

Mary K. Fagan, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

On March 1, 1943, the defendant requisitioned from plaintiff 225,000 pounds of meat and pork products. It offered to pay therefor the ceiling price fixed by the Office of Price Administration, but on plaintiff's refusal to accept this amount, it paid plaintiff one-half of it, as required by law. Plaintiff now sues for the difference between this amount and what it says is just compensation.

Plaintiff says that the best measure of just compensation in this case is what it cost to replace the products taken. The defendant says that the market price is the proper measure and that, since the highest price which plaintiff could have obtained

for these goods on the market was the ceiling price fixed by the Office of Price Administration, this is the amount that is just compensation.

We have heretofore held that the market price is not always the measure of just compensation,[1] and we do not think it is in this case.

The defendant does not deny that the ceiling price fixed by the Office of Price Administration was lower than the cost of production, but it, nevertheless, says that since plaintiff would have received no more for these goods had it sold them to its customers than the amount the defendant paid it, less the less-than-carload-lot differential, plaintiff's pecuniary position has been made no worse by the requisition of them and the payment of the ceiling price, and that, therefore, the payment of the ceiling price is the extent of its obligation.

■ It is true that the cases hold that when property is taken the owner must be put in as good position pecuniarily as he was in before his property was taken. Seaboard Air Line Ry. Co. et al. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 125, 44 S.Ct. 471, 68 L.Ed. 934; United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; Alexander D. Walker, et al. v. United States, supra. But defendant goes further than this and says that this is the extent of its obligation. Whether or not this is so in all cases, we do not need to decide. For the purposes of this decision we shall assume that this is the extent of its obligation. But, even so, the payment to plaintiff of the ceiling price did not put it in as good position pecuniarily as it was in before its property was taken. This is so because plaintiff had to replace the articles taken, and it could not do so at the price paid it. Plaintiff felt obliged to furnish its customers a certain amount of products, although at a loss, in order to retain their good will and to provide employment for its employees, and thus hold its organization together; but it kept on hand only enough goods to supply its customers with the minimum they could get along on; hence when defendant took its goods it was necessary for plaintiff to replace them, in order to supply its customers.

To do so, plaintiff undertook first to buy these products on the market, but it was unable to do so at the ceiling price. It was, accordingly, necessary for it to go into the market and purchase live hogs and process them and deliver the products to its customers. Since the price of live hogs had risen from $13.15 per cwt., the price at the time the OPA price was fixed, to $15.60 per cwt., it cost plaintiff more to replace the pork products than what the defendant had paid it and more than what it could obtain for them at the ceiling price fixed by the Office of Price Administration. When the Government took them it paid plaintiff less than what it had cost it to acquire them, and then when plaintiff had to replace the products and sell them at the OPA ceiling price, it sustained another loss. As a result of the requisition, therefore, plaintiff has sustained a loss on two transactions instead of one.

■■ Defendant, of course, as a wartime measure, has the right to fix a maximum price at which goods can be sold; but when it takes a citizen's property it is obligated to justly compensate him therefor. As a general rule, it has not justly compensated him unless it pays him an amount sufficient to take care of the loss it inflicts on him as a result of the taking of his property. United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014. Or, applying the rule that the Government is obligated to put the citizen in the same pecuniary position as he was in before his property was taken, to a case where plaintiff must replace the property taken—in such case the defendant must give plaintiff enough money to enable it to buy other property in place of that taken without sustaining a loss.

We have found that the cost of replacing

---

[1] Alexander D. Walker, et al. v. United States, 105 C.Cl. 553, 64 F.Supp. 135. Cf. Coombs v. United States, 106 C.Cl. 462, 65 F.Supp. 1014. See United States v. General Motors Corp., 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390.

the property taken was $30,293.00. In order to put plaintiff in the same condition it was in before its property was taken, the defendant will have to pay it the sum of $30,293.00.

By what we have said we must not be understood to imply that the ceiling price is the measure of just compensation when it is not necessary for the owner to replace the property taken. That case is not before us. See Walker v. United States, supra.

Defendant in its brief says that plaintiff's suit is an indirect attack on the Maximum Price Regulations and that such an attack can be made only before the Emergency Court of Appeals. This is clearly incorrect.

These regulations forbade plaintiff to sell its goods at higher than ceiling prices; but plaintiff has not sold its property to the Government; its property has been taken by the Government. In such case plaintiff is clearly entitled to demand the price the Constitution says it is entitled to. There is nothing in the Price Control Act which prevents it from making this demand in this tribunal. Plaintiff neither attacks the validity of the regulations nor does it seek to violate them.

Plaintiff has been paid for the pork products taken the sum of $12,556.25. The cost of replacing them was $30,293.00. Plaintiff is entitled to recover a judgment for the difference of $17,736.75, plus interest at 4 per centum from March 3, 1943, to May 22, 1943, on $12,556.25, and on $17,736.75 from March 3, 1943, to the date of payment, not as interest but as a part of just compensation. Judgment for this amount will be entered. It is so ordered.

WHALEY, Chief Justice, and JONES and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.