**ARKANSAS VALLEY RY., Inc., v. UNITED STATES.**

No. 46066.

Court of Claims.

Dec. 2, 1946.

728

MADDEN and WHITAKER, JJ., dissenting.

———————◆———————

Claude I. Depew, of Wichita, Kan. (Depew, Stanley, Weigand & Hook, of Wichita, Kan., on the brief), for plaintiff.

Kendall M. Barnes, of New York City, and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHALEY, Chief Justice.

The plaintiff is a corporation of the State of Kansas, and on July 16, 1942, owned and operated 63 miles of railroad within the State of Kansas between Hutchinson and Wichita, with a branch from Van Arsdale to Newton.

On that date, July 16, 1942, the defendant, acting through the War Production Board and the Metals Reserve Company, requisitioned the rails, track fastenings and other metal track material of the entire line, and, pursuant to the requisition, took possession.

Thereafter three segments were returned to the plaintiff intact by means of wash sales, it appearing that there was a need for them as transportation facilities in time of war.

The aggregate mileage of these three segments was approximately 2 miles, leaving a net requisition of 61 miles.

The defendant dismantled the remaining mileage and the War Production Board offered the plaintiff the sum of $109,569.53 as its share of just compensation for the taking, and $54,817.02 to the counties of Harvey, Reno, and Sedgwick as their share of just compensation. The county shares were delinquent taxes due the counties from plaintiff for the years 1934, 1935, 1936, and 1937, which were a lien on the materials taken.

The counties, with plaintiff's consent, were paid in full to the satisfaction of the county authorities, but the plaintiff was not satisfied with the award. The War Production Board therefore under the statute paid plaintiff $54,784.76 only, which is one-half of $109,569.53, and plaintiff now sues to recover sufficient more to make up what it conceives to be just compensation. Under these circumstances the payment of $54,817.02 is to be treated as a payment made to the plaintiff, and it will be so considered, so that there has been paid by the defendant, by way of just compensation for the taking, the aggregate sum of $109,601.78 on an award of $164,386.55, a difference of $54,784.77.

The plaintiff in its petition avers that the defendant is entitled to a credit $109,101.78 (presumably the sum of $109,601.78).

The defendant admits that the plaintiff was entitled to just compensation—the question is as to the amount.

The defendant's contention is that plaintiff is entitled only to the detached value of the material taken; the plaintiff counters with the proposition that the value to be considered is a so-called "in-place" value.

■ We think the in-place value must govern except as to the 43 miles hereinafter described. The fact cannot be escaped that when the requisition was served the company was operating the railroad. We so find. That does not mean that val-

ues are thereby to be raised inordinately. But the railroad was in fact in operation when the requisition was served and the dismantling took place afterwards. ·

There is here no room for application of the "severance" doctrine whereby taking of a part that results in direct damage to the remainder justifies additional compensation. A more inclusive taking can hardly be imagined than that which took place here. With the taking of the tracks there was a complete disappearance of the railroad and an end to the easement. The right of way vanished and the land reverted to the holder of the fee. The little that was left, ties and some poles, were salvaged by the plaintiff and are not here claimed upon. There was nothing left of the railroad; the defendant took it all, not even the shell was left. There is no such thing as a railroad without rails and a right of way.

The case of Coombs, Jr., Trustee, v. United States, 65 F.Supp. 1014, 106 Ct.Cl. 462, is along this line. In that case, the Navy Department requisitioned articles which comprised a factory and offered the owner compensation based on prices set article by article without considering the fact that the whole comprised a factory. This Court held that what was taken constituted a factory and, for that reason, had a special value which must be recognized in fixing just compensation.

It appears that the Office of Price Administration had set up certain maximum prices which governed the bulk of the metallic material here involved and that defendant's officers based their award upon these prices. The case was originally submitted to the court, after the report of a commissioner, upon testimony which the court deemed lacking in sufficiency. The case was remanded to the commissioner with instructions to:

1. Require the plaintiff to produce evidence as to the value of the property taken by the defendant at the time of taking.

2. Require the defendant, if it so elects, to produce ·

A. Evidence of the value of the property taken at the time of taking, or

B. The factors which were taken into consideration by the Office of Price Administration in arriving at the price placed upon the property by that Administration, or

C. Any other factors which should be taken into consideration in arriving at the money equivalent of the property taken at the time of taking.

■ Testimony was taken on the remand and the commissioner again filed a report. The parties accordingly have had full opportunity to offer evidence. The court is not satisfied that O.P.A. ceiling prices are the proper measure of just compensation. See A. D. Walker v. United States, 64 F.Supp. 135, 105 Ct.Cl. 553. However, in that case the ceiling price had been removed at the time of requisition.

The plaintiff was paid for demolition on a contract with defendant therefor.

The plaintiff was a going concern, the railroad was operating, the Intestate Commerce Commission had not yet issued its Certificate of Public Convenience and Necessity permitting an abandonment that had on January 30, 1942, been requested of the Commission. In fact, this certificate was not issued until July 20, 1942, four days after defendant's requisition. The certificate, therefore, was without legal effect.

There were two sections of requisitioned track that had market value as track in place. One was a stretch of 13 miles between Hutchinson and Burrton. On this section the findings place a fair market value of $85,814.42 with track in place.

The other section was 5 miles between Valley Center and the Ripley plant, on which there is found a fair market value of $29,484.25 with track in place.

■ Plaintiff's line was being placed on the market in sections, not as a whole. Its value as a whole had apparently disappeared before the time of requisition. In fact the plaintiff had taken the legal preliminary steps necessary to its abandonment. This fact must be and is taken into consideration.

The remainder of the road, 43 miles (excluding the two segments referred to immediately above and those returned by wash sales), had no fair market value as track in place, in which condition the taking was effected, beyond that of a salvage value of $180,155.81 (Finding 25).

There were certain outstanding taxes for the years 1932 to 1937, inclusive, imposed by the Counties of Harvey, Reno and Sedgwick, that constituted a lien on plaintiff's railroad. These three counties had by contract with the plaintiff agreed to remit these taxes provided the plaintiff would continue to operate its line, except for yearly payments of $100 to each of the counties during the years of operation. By this agreement it is obvious that plaintiff was given a sbstantial inducement to continue operation and it had planned to do so to the end of October 1942, three and a half months after the date of requisition July 16, 1942. When the defendant stepped in and took the railroad the plaintiff was thereby prevented from realizing on this inducement, the counties demanded their taxes, and the defendant paid them in the aggregate amount of $54,817.02.

It appears by the facts found that if plaintiff had continued to operate to the end of October 1942, instead of paying county taxes for the year 1934 in the sum of $17,071.40, it would have had to pay $300 only, a difference of $16,771.40. That is to say, if the requisition had been made November 1, 1942, the defendant for the year 1934 would have had to pay $300 only, not $17,071.40 and that payment having been included in the award to the counties and decreased the payment to plaintiff by that much, the plaintiff lost the difference of $16,771.40.

In determining the amount of just compensation that should have been paid in the first instance we use as a basis fair market values. The recovery is the excess of this over the payments made by the defendant, with an appropriate percentage of increase at an interest rate for the period that just compensation was withheld.

In its briefs the plaintiff seeks still further to increase this by $16,771.40. The possible loss of $16,771.40 is not claimed specifically in the petition. The plaintiff sues only for just compensation, and if this item is recoverable it must be because it is a part of just compensation.

■ Just compensation for a taking is to be determined as of the date of taking. The taking here was July 16, 1942. Only if the taking had been the first of November following, or later, would the counties have remitted the sum of $16,771.40. But in assessing values we are confined to the date of taking, United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55. Both condemnor and condemnee are subject to the advantages and disadvantages that the particular date of taking may bring. If the earlier date had been of advantage to the plaintiff and of disadvantage to the defendant, the defendant could not complain. We think here the plaintiff has no case in respect to a possible loss of $16,771.40, which was founded upon the possibility of a future event which in fact never took place. The loss was of a contingent nature, McGovern v. New York, 229 U.S. 363, 33 S.Ct. 876, 57 L.Ed. 1228, 46 L.R.A.,N.S., 391, at best amounted to a frustration and was consequential, United States ex rel. and for Use of Tennessee Valley Authority v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390. There is a doubt also whether by continuance of operation plaintiff would have fully realized $16,771.40. If it was operating at a loss, as appears to be the case, it would have cost the plaintiff something to earn the saving of $16,771.40.

■ To make recovery sufficient to comply with the concept of just compensation the plaintiff claims an interest rate of six percent per annum, as the legal rate of interest in the State of Kansas. But there is no statute or rule fixing any particular rate to be allowed. Since the determination of just compensation under the Fifth Amendment is exclusively a judicial function, it is for the Court to fix upon the rate that it will allow. For some time this Court has, in view of low prevailing rates of interest, limited this rate to four percent. A uniform rate does in fact avoid discrimination among litigants.

731

Just compensation for the taking here involved is computed as follows:

*For the sections:*

| | | |
|---|---:|---:|
| Hutchison to Burrton (13 miles)[1] | $85,814.42 | |
| Less salvage | 15,622.22 | |
| | | $ 70,192.20 |
| Valley Center to Ripley Plant (5 miles)[1] | 29,484.25 | |
| Less salvage | 2,487.25 | |
| | | 26,997.00 |
| For the remainder (43 miles)[1] | | 180,155.81 |
| Total value July 16, 1942 (61 miles) | | 277,345.01 |
| Less county taxes paid[2] | | 54,817.02 |
| Remainder due plaintiff July 16, 1942 | | 222,527.99 |
| Less paid to plaintiff July 26, 1943[2] | | 54,784.76 |
| Balance due plaintiff | | 167,743.23 |
| Add 4% per annum on $222,527.99 July 16, 1942, to July 26, 1943 | | 9,140.40 |
| Total due plaintiff July 26, 1943 | | 176,883.63 |

[1] Finding 25.
[2] Finding 5.

The plaintiff is accordingly entitled to recover $176,883.63 and four percent per annum on $167,743.23 from July 26, 1943, down to the date of payment of judgment, all as just compensation.

Judgment will be entered accordingly. It is so ordered.

JONES and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting).

I agree with what Judge Whitaker has written with regard to the awarding of an "in place" value for two sections of the railroad.

I do not agree with that part of the decision of the Court which awards compensation to the plaintiff computed at prices which could not have been lawfully asked or paid in a sale of the property at the time of the Government's requisition.

This case does not involve any necessity on the part of the plaintiff to replace the property taken, which was the equitable basis on which this Court's decision in the case of John J. Felin and Co., Inc., v. United States, Ct. Cl., 67 F.Supp. 1017, rested. Here the plaintiff had made applications to the Interstate Commerce Commission and to the Corporation Commission of Kansas for permission to abandon its railroad lines and operations and services. Its intention, according to the testimony of its vice president was "to scrap what parts we could not sell." The Government's requisition took the metal materials, thus destined for scrapping, for Government purposes. There is no question here of the classification of the materials except for a small number of turn-outs and crossings. As to the rest they were classified as reusable second-hand rails and track appurtenances.

If the plaintiff had, as it intended, offered them in the market for private purchase, it would have had to sell them at the legal price, i.e., the price fixed by the Office of Price Administration. The Government needed them for its proper activities, and requisitioned them, as it had the legal right to do. The Court holds that the Government, in order to satisfy its constitutional obligation to make just compensation, must pay more than its valid law would have permitted any one else to pay. And the evidence on which the higher price is based is that, before the price was put under control, the higher price had prevailed, and that, in the opinion of an expert, when the price control should have been removed, the higher price would, again, prevail.

This evidence does not seem to me to be helpful. Pecuniary values are the product of many factors, and, particularly in wartime, some of the most important factors are the actions of the Government. Embargoes, production quotas, priorities, and subsidies have their effects. And direct price controls have more direct effects. But all these factors are actual, and lawful, and, I think, should not be disregarded by resort to a hypothetical situation in which they do not exist. Besides, I think it is inequitable and discriminatory, in circumstances such as those present in this case, to pay the person, whose property happened to be requisitioned by the Government, more than his fellow, who sold his property in the market, could lawfully charge or accept. See A. D. Walker v. United States, 64 F.Supp. 135, 105 Ct.Cl. 553.

732

WHITAKER, Judge (dissenting).

I think plaintiff is entitled to no more than the value of the metals taken by the defendant. Its effort to support an "in-place" value for any part of its railroad leaves me unconvinced.

It had filed with the Interstate Commerce Commission an application to abandon its entire line. That application was granted on the condition that any portion of its line should be sold to any person desiring to operate it "at a price not less than the fair net salvage value thereof." It was negotiating with the Hutchinson and Northern Railway Company for the sale of 13 miles of it, and with the Kansas Gas & Electric Company for the sale of 5 miles of it, but the transactions never got beyond the negotiation stage. Whether either of these two prospective purchasers would have agreed to pay more than the "net salvage value" is doubtful.

After the metals had been requisitioned by the Government, the Government released therefrom 1¼ miles of track over which the Hutchinson and Northern Railway had been operating under lease from plaintiff. So far as appears, neither the Hutchinson and Northern Railway Company nor plaintiff sought to have the other 13 miles released from the requisition. Had the Hutchinson and Northern Railway Company been really interested in these 13 miles it would seem that an effort would have been made to have had them released from the requisition at the same time the 1¼ miles were released.

The testimony shows that the Kansas Gas & Electric Company was interested in the purchase of the other 5 miles and had discussed with plaintiff its purchase, but they had never gotten so far as to discuss prices.

I do not think the evidence supports a value higher than the net salvage value.

I agree that plaintiff is not justly compensated by payment of the Office of Price Administration ceiling price for the materials requisitioned. That price was below the market for the rails at the time the price was fixed. Plaintiff is entitled to no less than the market value at that time, since it appears that, except for the re-strictions imposed, the plaintiff could have gotten for its rails much more than the ceiling price fixed by the Office of Price Administration. Even so, I think the judgment granted is substantially more than plaintiff is entitled to, and for this reason I dissent.