GLADDING, McBEAN & CO. v. UNITED STATES.

No. 48917.

United States Court of Claims.

Dec. 4, 1951.

---

Bernard J. Gallagher, Washington, D. C., Walter E. Bennett, Los Angeles, Cal., on the brief, for plaintiff.

Kendall M. Barnes, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

In this case we must determine just compensation for tin oxide requisitioned from plaintiff by defendant. The problem is not so difficult as it has been in many cases presented to us since World War II.

In many cases arising out of transactions during that war the Government has insisted that the ceiling price established by the Office of Price Administration was the measure of just compensation. While recognizing the evidentiary value of the determination of this agency, we nevertheless rejected it as controlling. Arkansas Valley Railway, Inc., v. United States, 68 F.Supp. 727, 107 Ct.Cl. 240, certiorari denied 330 U.S. 811, 67 S.Ct. 1083, 91 L.Ed. 1266; John J. Felin & Co., Inc. v. United States, 67 F.Supp. 1017, 107 Ct.Cl. 155, reversed 334 U.S. 624, 68 S.Ct. 1238, 92 L.Ed. 1614; Coombs v. United States, 65 F.Supp. 1014, 106 Ct.Cl. 462; Walker v. United States, 64 F.Supp. 135, 105 Ct.Cl. 553. We continued to refuse to adhere to it as the controlling measure until the Supreme Court's decision in United States v. Commodities Trading Corporation, 339 U.S. 121, 70 S.Ct. 547, 94 L.Ed. 707, which somewhat deterred us from persisting in according it only evidentiary value. In that case the Supreme Court said that, in the absence of exceptional circumstances, the ceiling price must be taken as the measure of just compensation.

But, in this case, we find the Government, not insisting on the ceiling price, as it has always done heretofore, but saying that this price which it itself fixed as a just price is in fact more than just.

In prior cases the Government has undertaken to defend the position that the ceiling price fixed by the Office of Price Administration was the limit of just compensation on the ground that the ceiling price was fixed only after a careful evaluation of all the factors that go to make up a just price in times of a controlled market, and that, therefore, it should be accepted as the price that would be just to the owner and to the taker.

There is something to be said for this; but, whether right or wrong, the view entertained by the Supreme Court is that the price fixed by the Office of Price Administration is the measure of just compensation, in the absence of exceptional circumstances.

In this case the Office of Price Administration fixed a ceiling price on reclaimed tin oxide at 55 cents a pound, and on virgin tin oxide at 57 cents a pound. The Government requisitioned from plaintiff 18,992 pounds of virgin tin oxide and 46,999 pounds of reclaimed tin oxide. At the ceiling price therefor plaintiff would be entitled to recover $36,674.89, less the sum of $15,651.34 already paid, plus a sum to compensate for delay in payment.

But the defendant refuses to pay so much. It says the Inventory and Requisitioning Division of the War Production Board, after investigation, came to the conclusion that it could acquire without requisition most of, or all of the "frozen" tin oxide in the country at 51½ cents a pound for the virgin tin oxide, and 49 cents a pound for the reclaimed tin oxide. These prices were 5½ cents a pound below the Office of Price Administration prices on virgin tin oxide and 6 cents a pound on reclaimed tin oxide. Notwithstanding this, however, these were the prices the War Production Board fixed under its "Tin Oxide Recovery Program."

Under this program it acquired at these prices approximately 1,750,000 pounds of tin oxide, which was about 95 percent of all the "frozen" tin oxide in the country. Defendant says these prices, voluntarily accepted by other holders of tin oxide, are the measure of just compensation.

These sales to the Government were not at prices on a free market. They were made under compulsion of Conservation Order M-43-a, which severely restricted the use of tin oxide. Pertinent parts of it are set out in the note below.[1] Since the Government would not permit the use of the tin oxide except to a limited extent, the holders of it were willing to dispose of it for what they could get, rather than to hold it until that remote and uncertain day when restrictions might be removed.

These sales give little indication of a fair price; certainly they are by no means conclusive.

More persuasive to us is the price at which tin oxide was selling on a free market at the time controls were imposed. These prices at Los Angeles, California, plaintiff's place of business, were 55 cents a pound for reclaimed tin oxide and 57 cents a pound for virgin tin oxide. (East of the Mississippi River the price was two cents less per pound on each kind.)

These were the ceiling prices fixed by the Office of Price Administration, a fact, which in our opinion, has substantial evidentiary value, and which the Supreme Court deems conclusive, except in exceptional circumstances.

Cost, of course, is not a measure of just compensation, but it is some indication of the equity of the ceiling prices fixed. Of the 63,000 pounds plaintiff purchased during the year 1941, 43,500 pounds were from reclaimed tin. For somewhat more than half of this it paid 54 cents a pound, and for the balance, 53 cents a pound. For most of the virgin tin oxide it paid 56 cents a pound, and for the balance 57 cents a pound. In 1942 it bought 5,000 pounds of reclaimed tin oxide at 54 cents, and 5,000 pounds of virgin tin oxide at 57 cents. If normal carrying charges be added to the invoice price of this tin, it is evident that plaintiff's costs would substantially exceed the ceiling prices fixed.

But, more important, the ceiling prices were the market prices on the date the controls were imposed and the ceiling prices fixed. Except for the imposition of the controls, it must be assumed that plaintiff could have obtained for its materials prices at least equal to the ceiling prices. If not, the fixing of ceiling prices was idle.

These prices seem to us to reflect "just compensation," just as we thought they did in Walker v. United States, supra, and in other cases. Under United States v. Commodities Trading Corporation, supra, there is at least a strong presumption that they are the proper measure. We see no "exceptional circumstances" that would justify us in departing therefrom.

Judgment is rendered against the defendant and in favor of the plaintiff for $21,-023.55, plus a sum computed at four percent per annum thereon from April 4, 1944, to date of payment, and plus also a sum computed at four percent per annum on $36,674.89 from July 2, 1943 to April 4, 1944, both of the latter sums to compensate for delay in payment. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.

1. (a) *Prohibition of use of tin in articles appearing on list "A":*

 (1) Any person using tin in any Item on List "A" shall reduce his use of tin in any such Item between January 1 and March 31, 1942, to 50% of his use in the base period.

 (2) Effective April 1, 1942, no tin shall be used in the production of any Item on List "A."

 (b) *Limitation on all other uses of tin.* Any person using tin in any article not covered by paragraph (a) or (c) of this Order shall reduce his use of tin in any such article between January 1 and March 31, 1942, and during each calendar quarter thereafter to 50% of his use in the base period.