**ALPIRN et al. v. UNITED STATES.**
No. 49046.

United States Court of Claims.
April 7, 1953.

James J. Fitzgerald, Omaha, Neb., Francis P. Matthews, Jr., Omaha, Neb., on the brief, for plaintiffs.

Kendall M. Barnes, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This is a claim for just compensation for materials owned by plaintiffs and requisitioned by defendant on March 6, 1943, under the terms of the act of October 16, 1941, 55 Stat. 742, as amended. The issue here presented is the determination of the amount of compensation properly due plaintiffs. Defendant has tendered $44,204, but plaintiffs contend that they are entitled to $51,788.

The property here involved was certain metal materials stored in the warehouse of Bekins Van and Storage Company in Omaha, Nebraska. The prime question is the proper valuation of this material. At the time of the requisition mentioned above this property was owned by Western Smelting & Refining Company, a Nebraska corporation. Subsequently its corporate existence was terminated, and its business was continued by its stockholders, the present plaintiffs.

The materials in question were acquired by plaintiffs during the period 1933 to 1940 or 1941 and stored in the Bekins warehouse. Plaintiffs secured various loans from Bekins on the security of the warehouse receipts covering the materials so stored, and on January 20, 1939, all these existing notes were consolidated into a single note for $58,061. This note was signed by the corporation, endorsed by the plaintiffs here, and was further secured by a mortgage on certain real property, machinery and equipment. On this note Melvin Bekins lists the material then in storage as having a market value of $65,000, though no classification or inventory was made. It is this valuation which plaintiffs claim should be used in arriving at just compensation.

Starting in the latter part of 1942, plaintiffs made over 50 attempts to dispose of the stored material as copper and brass scrap. Eventually 57,900 pounds of the material were disposed of after refusal by one company and rerouting to another. One 10,000 pound shipment was sold from the warehouse to an unidentified recipient. On November 7, 1942, one carload of material weighing 53,420 pounds shipped to Allis Chalmers Manufacturing Company in Mil-

kee, Wisconsin, was refused, but had een unloaded by that company and was still in storage at its plant on March 6, 1943.

On March 6 and 9, 1943, the defendant, acting through the War Production Board and Metals Reserve Company, requisitioned and took possession of the above-mentioned materials stored at Bekins Van and Storage Company and Allis Chalmers Company, respectively. The net weight of the material taken at these two locations was 554,915 pounds. Two inspectors, one an employee of the War Production Board, and the other an employee of an independent engineering firm (Robert W. Hunt Co.) employed for the purpose, checked the material removed from the warehouses. Both testified that all material removed was metal scrap. This material was subsequently classified into some 25 different types or classes of metal scrap by a representative of the engineering firm acting as agent of defendant.

At the time of requisitioning 6,555 pounds of copper cable was discovered in the material at Bekins warehouse which was not in scrap condition. This was not removed under the requisition, and the War Production Board assisted plaintiffs in locating a purchaser for it at an "as is" price of $1,042.25.

The plaintiffs maintained no detailed, itemized record of the type and amount of its materials stored with Bekins. While Melvin Bekins, president of the Bekins Company, testified that his company had records as to type, quality, and gross weight of plaintiffs' merchandise, such were not produced in evidence.

On April 16, 1943, the War Production Board gave formal notice of the requisitions to plaintiffs and all other persons having or claiming an interest in the property. The Bekins Company filed proof of claim predicated upon its lien on the material as security for loans to plaintiffs, with the War Production Board on May 28, 1943. The First National Bank of Omaha filed proof of claim, predicated on rediscount of the above-mentioned notes, on May 13, 1943. Despite attempts made by the War Production Board to secure a proof of

claim from plaintiffs, no claim was fi[...] until April 11, 1945.

· A preliminary determination of just compensation of $43,802.06 was made by the War Production Board on December 3, 1943 and notice given to all interested parties. Of this amount $460.29 was paid to Allis Chalmers Company in payment of its claim with respect to materials requisitioned in Milwaukee. This payment is not questioned here. An award of compensation, computed at prevailing Office of Price Administration ceiling prices for scrap, in the same amount was made by the War Production Board on May 3, 1944, to "Persons Unknown" since proof of claim establishing ownership had not been submitted.

Plaintiffs first stated their position with respect to the value of the property requisitioned on April 11, 1945. Thereupon a reexamination of the entire basis of the award was made, resulting in the determination that plaintiffs might have been able to sell for re-use, rather than as scrap, 2,333 pounds of tableware included in the requisition. The price tendered for this material was then raised from 7 to 25 cents per pound, a total increase of $401.94. An amended award in the amount of $44,204 was accordingly issued on January 16, 1946, directing payment of the award, other than the $460.29 payable to Allis Chalmers, to the First National Bank of Omaha, Bekins Van and Storage Company, and plaintiffs. Pursuant to instructions issued by these three claimants a check in the amount of $21,871.85, representing 50 percent of the net award payable to those concerns, was sent to the First National Bank of Omaha as payment on account of the award.

On July 15, 1948, the First National Bank of Omaha and Bekins Company assigned to plaintiffs any claims they might have against defendant resulting from the requisitions, in consideration of the receipt by them of the $21,871.85.

Plaintiffs contend that the valuation placed on the property by Bekins in 1939 should be the basic measure of just compensation in this case. Thus, by deducting the amount received for material sold prior to the requisitioning ($13,212), from the Bekins valuation ($65,000), the compen-

sation here claimed ($51,788) results. In addition it is asserted that defendant prevented plaintiffs from taking an inventory at the time of the taking and also failed to take bids on the material before sale.

Defendant counters that the War Production Board classification was correct and proper; the assignment of the claims to plaintiffs is invalid; and in any case, plaintiffs are not entitled to interest since delay in making the award was largely caused by plaintiffs.

■ In view of the fact that plaintiffs' ownership of the property is unquestioned, the transactions between plaintiffs and Bekins and the Bank being merely a method of negotiating loans, and the purported assignment to plaintiffs being simply the release of something in the nature of a mortgagee's interest, we do not feel that the assignment question is seriously presented. Plaintiffs may maintain this action irrespective of any purported assignment.

■ It is clear that unless a claimant proves special conditions and hardships peculiarly applicable to him, Office of Price Administration ceiling prices are the maximum measure of just compensation for property requisitioned. United States v. Commodities Trading Corp., 339 U.S. 121, 70 S.Ct. 547, 94 L.Ed. 707. No proof was offered on this point and the rule is controlling here. The basic issue is therefore the propriety of the classification to which the ceiling prices were applied.

■ The essence of plaintiffs' contention is that inasmuch as Mr. Bekins, in 1939, *estimated* the property in question to have a higher value than is reflected in the award of the War Production Board, we should assume that he classified more of the material as usable than was the case in the inventory on which the award was based. Such an assumption is not warranted by the evidence. The record is clear that no classification was made at that time. The estimate was for the purpose of evaluating one of several items of collateral security and not for the purchase of the material. Nor can we assume that the 67,000 pounds sold prior to the requisition included the more valuable or usable

goods in exact ratio to the whole. Under the circumstances we feel that we can accept as more accurate the inventory and classification actually made without necessarily questioning either the veracity or business judgment of Mr. Bekins.

On the question as to whether plaintiffs were prevented from taking an inventory by defendant's representatives, the evidence is in considerable conflict. One of the plaintiffs testified that he was denied access to the warehouse by some unidentified representative of the defendant. On the other hand, defendant's representative in charge of the removal of the material states flatly that he did not deny access to either Bekins or plaintiffs and had the request for access been made it would have been granted. It is not insignificant in connection with plaintiffs' claim that defendant is responsible for their lack of information as to what was in the warehouse, that while Mr. Bekins stated that his company had records as to type, quality and gross weight of plaintiffs' merchandise, these records were not produced. Silence under such circumstances cannot be ignored. Interstate Circuit Inc. v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610.

The commissioner found that the requisitioned material consisted of copper and brass scrap, plus 2,233 pounds of tableware; and that the total value of the property taken, computed at Office of Price Administration ceiling prices, was $44,204.00. After a careful review of the record, we conclude that these findings are supported by the evidence and they are therefore adopted by the court. Deducting from this total the $460.29 paid to Allis Chalmers Manufacturing Co., and the $21,871.85 paid to the First National Bank of Omaha, the balance of $21,871.86 represents the portion of the amended award remaining unpaid. The actual value of the property taken was tendered to plaintiffs on January 16, 1946, and they would ordinarily be entitled to interest on such amount from the date of the taking to the date of the tender as a part of just compensation. However, we conclude from the evidence that plaintiffs are largely responsible for the delay in a final settlement from March 6, 1943, the date of the taking, until April 11, 1945, the date on which plaintiffs' proof of claim was filed.[1] Therefore, plaintiffs are now entitled to recover $21,871.86, plus interest on $44,204.00, at 4 percent per annum, from April 11, 1945, through January 16, 1946.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.

1. Chronology of pertinent events:
March 6, 1943—Plaintiffs' property requisitioned by defendant.
April 16, 1943—Defendant mailed formal notice of requisitions to all interested parties, including plaintiffs.
May 13, 1943—First National Bank of Omaha filed proof of claim.
May 28, 1943—Bekins Van and Storage Co. filed proof of claim.
Dec. 3, 1943—Defendant made a preliminary determination of $43,802.06 as just compensation for property taken.
May 3, 1944—Defendant made award in above amount to "persons unknown" since plaintiffs had failed to file proof of claim, and no other claimant asserted ownership of the property.
April 11, 1945—Plaintiffs filed proof of claim.
Jan. 16, 1946—Defendant issued an amended award in the amount of $44,204.00 (the actual value of the property).