in computing his years of service under the 1882 act. The rule of the Morton case and the Comptroller General's decision have evidently been applied by the Army and Navy in computing "length of service" of those officers whose academy service occurred prior to 1912 and 1913. Those men who did accept academy appointments during that period, 1884 to 1912 or 1913, must be presumed to have accepted with the understanding that their academy time was to be counted in achieving retirement under the 1882 act. The plaintiff was in that group. His impression that his academy service was to count is supported by the fact that he applied for retirement under the 1882 act and included his four years of service at the academy in order to satisfy the 40-year requirement.

We conclude, therefore, that pursuant to the orders of October 2 and October 4, 1941, plaintiff's retirement under the Act of June 30, 1882, supra, was effective January 31, 1942, and that nothing was done by any one of proper authority to revoke or withdraw such orders. Plaintiff's petition is hereby dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

## ALPIRN v. UNITED STATES.
### No. 49059.

United States Court of Claims.
July 13, 1953.

James J. Fitzgerald, Omaha, Neb., Francis P. Matthews, Jr., Omaha, Neb., on the brief, for plaintiff.

Kendall M. Barnes, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This action is brought to recover just compensation for certain machinery and scrap materials requisitioned by defendant, pursuant to the act of October 16, 1941, 55 Stat. 742, as amended. Defendant has tendered $9,113.45, but plaintiff claims $47,011.88, plus interest.

On March 13, 1943, defendant, acting through the War Production Board, requisitioned and took possession of 86 tons of scrap material and the following scrap-processing machinery owned by plaintiff:

One 15-ton locomotive crane, with magnet and generator.

Two No. 3 Doelger-Kirsten shears.

One No. 3 United shear.

Two No. 1½ Doelger-Kirsten shears.

One Fairbanks Morse truck scale.

The undisputed value of the scrap material is $3,375.68, and the proper valuation of the machinery is the primary issue presented by this case.

Shortly after seizure by the defendant notice of the requisitions was sent to plaintiff, the Bekins Van and Storage Company, and the First National Bank of Omaha, all of Omaha, Nebraska. The Bank and the Bekins Company filed proofs of claims with the War Production Board, hereinafter referred to as the WPB, on May 11 and May 28, 1943, respectively, based on the security interest which they had in the property requisitioned. (Finding 2.) Upon the receipt of a letter dated July 2, 1943, and signed "M. Alpirn, Sec'y", which purported to list items taken and their valuation, the WPB promptly advised plaintiff that the letter could not be considered as a claim and requested the submission of proof of claim in proper form. This request was not complied with until July 9, 1946.

About the time of the requisitioning, the defendant solicited and received bids on the materials taken from three scrap metals dealers in Omaha. The machinery here in question was sold by the defendant as a single lot to the highest bidder, Aaron Ferer & Sons Co., whose bid per item was as follows: five sets of shears, $2,500; one locomotive crane in scrap condition, $150; one magnet and generator, $350; one truck scale, $151.96. Using these prices as a basis, a preliminary determination of just compensation of $6,602.64 for all requisitioned material including the scrap was made by the Board and the interested parties were so notified. Inasmuch as plaintiff had filed no proof of claim, an award in the above amount was made to "persons unknown" on May 3, 1944. Following a conference between plaintiff's son and WPB officials in mid-1945, the question of just compensation was reviewed, and it was found, inter alia, that Ferer had sold the five sets of shears, the magnet, and generator for $5,650; the truck scales for $12.50 as junk; and the crane had been cut up and disposed of as scrap for $150. Defendant thereupon made an amended award of $5,951.96 for the machinery ($9,113.45 total) and notified plaintiff accordingly. Upon receipt of plaintiff's proof of claim, an amended award in the above amount was made on July 16, 1946, providing for payment to plaintiff, Bekins Van & Storage Company, The First National Bank of Omaha, Morton Alpirn, and The Western Smelting and Refining Company.[1]

This award was rejected by plaintiff as unsatisfactory. Claiming that the taking was illegal, he also refused to accept 50% of the award as provided for by statute because execution of the required release, while reserving the right to sue for additional compensation, would have waived any claim for damages arising from such alleged illegality.

While conceding that fair market value is the proper measure of just compensation in this case, plaintiff contends that he is entitled to an in-place market value. It is further argued that the defendant did not make sufficient effort to obtain the best available price and therefore the amount received did not reflect fair market value.

1. The Western Smelting and Refining Company was at one time a corporation, then later a trade name under which plaintiff carried on his scrap metal business.

The contention is that the fair market value at the time of requisition was best reflected by the Office of Price Administration ceiling prices for used machinery when in effect. At the time in question the OPA ceiling prices for used machinery of the type here involved was 85% of the new price if the machinery had been rebuilt and guaranteed, and 55% of new price if the machinery was merely operable. It is on the basis of the 85% of new price formula that plaintiff claims $43,636.20 as just compensation for the machinery requisitioned. This amount is arrived at by regarding all the shears, the crane, magnet and generator as rebuilt, guaranteed equipment, and adding $1,200 as the value of the truck scale plus $7,900 as the cost of installing the shears on concrete bases and covering them with appropriate sheds. Plaintiff's position is supported by neither the record in this case nor the applicable law.

■ We turn first to the contention that plaintiff is entitled to in-place value for the five sets of shears and the truck scale. In support of this proposition plaintiff relies primarily on the cases of Arkansas Valley Railway v. United States, 68 F.Supp. 727, 107 Ct.Cl. 240, and Coombs, Trustee, v. United States, 65 F.Supp. 1014, 106 Ct.Cl. 462. These cases are not sufficiently apposite to be controlling here. The decision in Arkansas Valley Railway, supra, does not rest on the theory that in taking the rails the Government rendered the 13 miles of railroad useless to the company and therefore compensable, but rather that the taking of that section of the railroad was complete inasmuch as the right of way from which the rails were taken reverted to the owners of the fee. In the instant case there is no claim that the defendant took anything other than the machinery. Just compensation is restricted to the value of the property taken. After reviewing the basic principles involved in arriving at just compensation the Supreme Court stated in United States v. General Motors Corp., 323 U.S. 373, at page 379, 65 S.Ct. 357, at page 360, 89 L.Ed. 311:

"In the light of these principles it has been held that the compensation to be paid is the value of the interest tak-

en. Only in the sense that he is to receive such value is it true that the owner must be put in as good position pecuniarily as if his property had not been taken. * * *"

The Coombs case is also distinguishable in that the valuation of the machinery requisitioned was as an integrated unit comprising a factory with some value as a going business and as such commanded a higher market price than the OPA ceiling prices for individual pieces of machinery taken. It was the market value of a factory and not a computation of the costs of installation which accounts for the additional compensation allowed there. In the case now before us no showing of in-place value is made other than combining the ceiling price for each set of shears and adding the 1943 cost of reproducing the concrete foundations on which they rested plus other installation expenses. The factors which must be considered in determining just compensation necessarily vary with the circumstances of a particular case, but we take it as well settled that where a market exists for the property involved the mere showing of replacement costs is not a correct measure of just compensation. United States v. John J. Felin & Co., 334 U.S. 624, 68 S.Ct. 1238, 92 L.Ed. 1614. The plaintiff's claim for $7,900 installation costs must therefore be rejected.

■ Plaintiff's equating of OPA ceiling prices for rebuilt and guaranteed machinery with the market price of the machinery requisitioned is not justified by the proof. While there is sufficient evidence to support the commissioner's finding that defendant exerted something less than the best effort to obtain the highest possible price for the five sets of shears, it is equally clear that they were somewhat antiquated and at best merely operable. Nothing in the record indicates that repairs had been made nor indeed that rebuilding would have been practical. In view of these circumstances, the commissioner found their fair market value to be $6,555, which is the OPA ceiling price under the 55% of new price formula. The OPA ceiling price is not the measure of just compensation, but merely the top market price ordinarily allowable during a pe-

riod in which price controls are in effect. Commodities Trading Corp. v. United States, 339 U.S. 121, 70 S.Ct. 547, 94 L.Ed. 707; Swiss Federal Railways v. United States, Ct.Cl., 112 F.Supp. 357. Therefore, we adopt the commissioner's finding not because it is the OPA ceiling price, but because there is sufficient evidence to indicate that had the effort been expended the shears would have brought that amount on the market.

There is considerable conflict in the record as to the condition of the crane and the value of the scale, but the commissioner who observed the witnesses during the trial has found that by the credible evidence the crane was inoperable, and the fair market value of the crane and scale was $150 and $151.96, respectively. This conclusion would seem to be supported by the fact that upon inquiry of a specialist on such machinery, defendant's vendee was advised that the crane was beyond repair and ultimately disposed of it as scrap for $150. Similarly, only $12.50 was realized from the sale of the truck scale as junk. We have found no evidence which would warrant rejection of these findings, and they are accordingly adopted. Plaintiff has not questioned the $350 valuation placed on the magnet and generator, except by including them in the claimed value of the crane. This amount is also supported by the record and is adopted as correct.

After careful consideration of the entire record we conclude that the fair market value of the machinery at the time of taking was $7,306.96.

There remain for consideration two contentions by defendant hereinbefore unmentioned. The first relates to an alleged assignment by the Bekins Company and the First National Bank of Omaha to plaintiff of their interest in the claim, and the second raises the question of the interest properly allowable in this case.

We have found no purported assignment of an interest in this claim to plaintiff in the record of this case. It might be noted in this connection, however, that all persons exhibiting an interest in the subject matter of this suit were served with notice to appear, and having failed to respond within the required time are now barred from contesting plaintiff's right to judgment. Public Law 395, section 14(b), 78th Congress, 2d session, 58 Stat. 663, 41 U.S.C.A. § 114(b).[2]

■ The question of allowable interest here presented involves problems similar to those dealt with in the companion case of Alpirn v. United States, Ct.Cl., 111 F.Supp. 280. On the basis of our findings the plaintiff is entitled to $10,682.64, which is the sum of $7,306.96 for the machinery and $3,375.68 for the scrap, as just compensation for the material requisitioned. Ordinarily, plaintiff would be entitled to interest on this as a part of just compensation. It should be noted, however, that this rule is subject to qualification and for reasons given below is inapplicable to all periods here invoived. We conclude from the evidence that plaintiff was largely responsible for the delay in final settlement from March 13, 1943, the date of the taking, until July 9, 1946, due to his failure to file a proof of claim prior to the latter date. Similarly, it appears that delays in litigation from November 15, 1949, to May 7, 1951, were occasioned by the plaintiff and have not been justified. Interest during the period of such delays is not allowable. United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935. Accrual of interest was stopped by stipulation as of May 7, 1951. There is also the further consideration that plaintiff refused to accept 50% of the amended administrative award ($4,556.73), as provided by statute when it was tendered to him on July 16, 1946. Such tender stopped the running of interest as to that

2. Defendant was apparently referring to a purported assignment by the Bekins Company and the Bank to Morton Alpirn, who is not a plaintiff here. Pursuant to the cited statute notices to appear were served on the Bekins Van & Storage Co. (corporation), Bekins Van & Storage Co. (a partnership), First National Bank of Omaha, Morton Alpirn, Western Smelting and Refining Co. (a corporation), and Western Smelting and Refining Co. (a partnership), none of whom have responded thereto.

amount. Companhia Uniao Fabril, Ltda., v. United States, 118 Ct.Cl. 451.

We conclude that plaintiff is now entitled to recover $10,682.64, with interest at 4 percent per annum from July 9 to July 16, 1946, together with interest at the same rate on $6,125.91 from July 16, 1946 to November 15, 1949, all interest being allowed not as interest but as a part of just compensation.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.

## MODERN ENGINEERING CO., Inc. v. UNITED STATES.

### No. 48876.

United States Court of Claims.
July 13, 1953.

Sheldon E. Bernstein, Washington, D. C., for plaintiff. Newmyer & Bress, Washington, D. C., and Blum, Jacobson & Shkoler, Chicago, Ill., were on the brief.

Mary K. Fagan, Washington, D. C., with whom was Holmes Baldridge, Asst. Atty. Gen., for defendant. Donald D. Webster, Baltimore, Md., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

In this case we are once again requested by defendant to deny plaintiff's claim as a war contractor for relief under the provi-