## Art Club of Philadelphia *v.* Heyman and Goodman, Appellant.

588

Argued January 19, 1937. Before Maxey, Drew, Stern and Barnes, JJ.

*Gilbert J. Kraus,* of *Kraus & Weyl,* for appellant.

*Thomas F. Gain,* with him *John J. Gain* and *Brown & Williams,* for appellee.

OPINION BY MR. JUSTICE DREW, March 22, 1937:

This action of trespass was instituted by the Art Club of Philadelphia, a corporation, to recover compensation for damages allegedly sustained by it as a result of defendant's negligence. By agreement the case was tried below without a jury. The court found for plaintiff in the sum of $9,111 which was computed as follows: $4,515 for the cost of repairs, $2,500 for depreciation in the value of the building, and $2,096 for delay in payment. After its exceptions to the findings of fact and conclusions of law were overruled and judgment entered, defendant appealed.

The Art Club building is located at the southwest corner of Broad and Chancellor Streets. The defendant, Heyman and Goodman, a corporation, held a contract from the City of Philadelphia for the construction of a subway in Broad Street from South Street to City Hall.

The damages complained of were asserted to have occurred during construction in May, 1928. Plaintiff contended that there had been a lateral movement of the building, varying from one-half inch to one inch and that the walls of the building had settled to an extent varying from one-quarter inch to thirteen-sixteenths of an inch. The plaintiff further contended that the cracking, settling and damage to the building were caused by the failure of defendant to timber the excavation in the usual and customary manner.

A brief statement of the facts will serve to dispose of defendant's primary contention, namely, that the evidence was inadequate to support the finding of negligence. Defendant had excavated Broad Street, to and beyond plaintiff's property and from property line to property line, for an approximate depth of thirty-eight feet. To support the earth beneath the buildings and also the street, timber structures, known as bents, were built across the cut. Each bent was constructed of numerous horizontal and vertical braces. But in each the lowest series of horizontal timbers extending completely

across the cut was twenty feet above the floor of the excavation. This resulted in an open space twenty feet square in the center of the cut without any bracing at all. As a consequence the lateral pressure of the earth at each side of the lower half of the cut, and hence also the downward pressure of the earth of the upper half, was not supported by a rigid figure of cross-bracing. The bents or cross sections were placed twenty-two feet apart instead of at intervals of eleven feet, as indicated on the contractor's own plan as originally submitted to the Department of City Transit. There was testimony that in sound and customary practice the spacing should not exceed a maximum of eleven feet. There was also testimony of two engineers, one of twenty years' and the other of about thirty years' active experience in subway excavation, that the bents were improperly constructed in that they provided no complete cross-bracing at the lower part of the cut. It was shown that the Department had notified defendant that it was employing a defective method of bracing. On May 11, 1928, a City inspector, in touch three times daily with conditions in the cut, noticed that the sheeting on the west side of the excavation at a point near the Art Club corner, at Chancellor Street, bulged to the extent of approximately three inches about five feet above the floor of the excavation. The same day he noticed fresh cracks in the mullions of the first floor and cellar windows of the building. On May 21, 1928, a City engineer found a bulge in the sheeting at a point before the Equitable Building, which adjoins the Art Club. The bulging of the sheeting at this point was about four and a half to five inches in extent and about eight feet from the bottom of the excavation. The same day new cracks appeared in the walls of the building. Department surveying engineers testified that the plaintiff's building underwent progressive lateral and settling movements during the period the excavation remained with its sides supported as heretofore described.

Thus it appears that the finding of the trial court, both as to the substantial cause of the injuries complained of and as to the negligence of defendant in that regard, was amply supported by evidence. So sustained it may not now be disturbed: *Wallace v. Moyer,* 317 Pa. 287.

Several assignments of error have to do with the admission of evidence. One of the witnesses calculated the distance the building moved in a lateral direction after the original survey. In making this computation he used a memorandum of the figures taken on the original survey, but did not have his original record of those figures. Assuming this was error, being in contravention of the best evidence rule, it was entirely harmless. Progressive lateral movement was one of the principal facts to be established. This was done by showing periodic surveys, and the original data of all but the first were in court; comparison of the later ones inter se without regard to the first shows the movement and establishes the fact without the evidence objected to.

The contract with the City in which appellants undertook, inter alia, to do the work without damage to adjacent property was admitted in evidence. This was done, without objection, to show defendant's relationship to the work. Defendant complains that the trial judge's adjudication was based upon findings that the contractor's obligation to abutting property owners was governed by the provisions of the contract between the contractor and the City. We cannot agree with this. We get no such impression from a reading of the record. *Diksajtsz v. Brosz,* 104 Pa. Superior Ct. 246, relied upon by appellant, is not applicable here. That case was tried with a jury and the ground of the ruling was that the terms of the contract, as it was presented in the case, might have misled the jury to the conclusion that the defendant had an absolute duty to support the defendant's property. Here, however, it clearly appears no dependence was placed on the contract to determine negli-

gence, and the specific findings of negligence by the trial court, based on substantial testimony, disclose what the general verdict of the jury could not, distinguish the instant case from the *Diksajtsz* case, and destroy the objection to this contract.

Defendant urges that plaintiff's recovery should have been limited to the cost of repairing its building. This contention is unsound because the trial judge accepted as true the evidence that the building was depreciated beyond the cost of repairs. The plaintiff was entitled to be restored, as nearly as possible, to the position it held before. This court has settled the principle that for damage to realty a plaintiff may recover for remediable injury the cost of repairing it, or depreciation caused by it, whichever be lower, and for permanent damage the depreciation in market value of the realty: *Rabe v. Shoenberger Coal Co.*, 213 Pa. 252. The principle of this case is no less applicable where the injury is partly reparable and partly permanent. Such indeed was the *Rabe* case, and in *Vanderslice v. Philadelphia*, 103 Pa. 102, very like the instant case, the factors to be compensated were listed as "permanent injury done to the building, cost of repairs, and the loss of rent for the time necessary to make the repairs. . . ."

There can be no reasonable objection to the allowance for detention. It is less than interest at the legal rate, and while that is not the measure, no objection can be made to a lesser sum.

All the assignments are overruled and the judgment is affirmed.

Chief Justice KEPHART and Justices SCHAFFER and LINN took no part in the hearing and decision of this case.