## SCHAFFER v. UNITED STATES.

### No. 45990.

Court of Claims.
June 4, 1945.

Glenn Thomas Cousins, of Clinton, Iowa (Miller, Miller & Cousins, of Clinton, Iowa, on the brief), for plaintiff.

Kendall M. Barnes, of New York City, and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff operated an automobile "graveyard" at Clinton, Iowa. He bought old or wrecked cars and placed them on his several acres of land. His purpose was to obtain from them usable parts which he could sell at retail, and to sell for scrap the hulks of the cars including such parts as he did not succeed in retailing for further use. In June of 1942 the plaintiff had 177 cars or trucks, or the hulks of them, on his premises. There being at that time a great need for scrap steel, as well as for non-ferrous metals such as aluminum, copper, and brass, for war production, the Government tried to get a great deal of the metal, which was in the thousands of auto-

mobile graveyards throughout the country, moved to the steel and other metal producing plants.

The Act of October 16, 1941, 55 Stat. 742, 50 U.S.C.A.Appendix § 721 et seq. authorized the President to requisition, inter alia, "materials necessary for the manufacture, servicing, or operation of such equipment, supplies, or munitions * * * needed for the defense of the United States." Correspondence, quoted in findings 3 and 4, between the plaintiff and the War Production Board, which was acting for the President, shows that the Board attempted to get the plaintiff to sell the contents of his yard at scrap or junk prices. The plaintiff, asserting that such prices would not include the value of usable parts which the plaintiff expected to get from the cars in his yard, refused, and, on June 17, 1942 the Government requisitioned and caused to be taken away all the cars, trucks, parts, tires and tubes in the plaintiff's yard and buildings. The materials were weighed and the plaintiff was offered $4,157.80 which was the right price of the materials as scrap. He refused to settle for this amount, and, under the terms of the requisition statute, accepted one-half the amount, or $2,078.90, without prejudice to his right to recover more, if he was entitled to it, in this court.

■ We think the Government's offer to pay only scrap prices for the plaintiff's materials was too low. If they were worth no more than that, there would be no point in any automobile graveyard enterprise, since the scrap value could be obtained immediately upon the automobiles being brought into the yard. There are thousands of these enterprises in the country, and have been for many years, so there must be a profit to be made by detaching and selling, for further use, parts, including tires and tubes, from old and wrecked cars. The plaintiff is, therefore, entitled to more than he was offered.

■ The question of how much the plaintiff's stock was worth is difficult, and cannot be determined with much precision. The plaintiff made an inventory at the time the Government was taking the materials away, in which he listed all the parts, of the kind usually saleable, whether they were still incorporated in a hulk of a car, were lying in or under or beside it, where they had been placed when other parts were taken from the car, or had been laid away in a shed, as some parts of kinds most sensitive to the weather, such as motors and generators, and tires and tubes, had been. He valued each part at its retail sale price as a used part, then discounted the totals for tires and tubes by 20 percent, and the totals for other parts by 33⅓ percent, the discount being on the theory that the Government's bulk requisition relieved him of the necessity of retail handling, and hence the price should be a bulk sale price. The total given by the plaintiff's figures is $12,263.84. The prices of individual parts shown in the plaintiff's inventory are approximately correct in the sense that if a customer came along who happened to need and want to buy any one of the parts, that would have been the price he would have paid. But we do not think the plaintiff had any reasonable prospect of selling at retail more than a fraction of the potentially saleable parts in his yard. As we understand the automobile graveyard business, the customers' wants are highly particularized. For example, his 1933 Chevrolet has a cracked cylinder head. He could buy a new one, but its costs would be large in comparison with the value of his car, so he may go to an auto graveyard to see if he can get one there. There might be one or several 1933 Chevrolets there, and one or more of them might have a usable cylinder head. If so, a sale will result. But every sale is, to a considerable extent, a chance meeting of a highly particularized demand, out of a supply which must be of considerable variety if it is to have any prospect of meeting such a demand. From any particular car in stock, only a few out of the many potentially saleable parts may ever be asked for by customers. The result, as we understand it, is that a large portion of the potential supply must ultimately go for scrap, as the models in the yard become older and fewer cars of the kind that might need such parts are running.

We think, therefore, that the plaintiff's asserted values which are based, in general, on an assumption that every potentially saleable part would have been sold, are far too high. We have, on the basis of the highly conflicting testimony, come to the conclusion that, considering the plaintiff's stock of tires and tubes as well as his stock of potentially saleable parts, and the four cars that were potentially saleable intact, he had a reasonable prospect of re-selling for further use about one-fourth of his in-

ventory. We therefore think he should have been paid $6,250. He was offered $4,157.80 and was paid $2,078.90. He may recover $4,171.10, with interest at 4 percent per annum, as a part of just compensation, from June 17, 1942.

It is so ordered.

WHALEY, Chief Justice, and LITTLE-TON, WHITAKER, and MADDEN, Judges, concur.

JONES, Judge, took no part in the decision of this case.