## UNITED STATES v. AMERICAN METAL CO. et al.

Civ. No. 9273.

United States District Court
D. New Jersey.

Oct. 17, 1949.

Alfred E. Modarelli, U. S. Atty., Edward V. Ryan, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Joseph J. Corn, Newark, N. J., for defendants.

FAKE, Chief Judge.

The principal amount involved in this case is not in dispute. A contention arises as to whether any interest can be charged, and if so at what rate and from what date.

The record discloses that on the 9th day of January, 1942, Radio Corporation of America entered into a contract with the Government for the manufacture and delivery of certain electronic material. Thereafter the Radio Corporation entered

into a sub-contract with defendants. Each of these contracts was subject to re-negotiation under the law, and pursuant thereto, after hearings, it was found that these defendants had been overpaid; the defendant corporation in the sum of $107.-17, and the individual and partnership defendants in the sum of $25,058.65. These figures were originally ascertained and fixed on February 17, 1944. Some months later, on September 5, 1944, the Under Secretary of War served a notice on the Radio Corporation of America, the effect of which was to impound the sum of $30,000, of monies alleged to be due from the said Radio Corporation to defendants. On February 12, 1945 the amount thus impounded was reduced to $25,165.82. This of course resulted in the withholding of that amount from defendants which might have been applied by them to the Government's demand. This factor may, however, cancel out as an element favorable to defendants. It is argued that the defendants could have paid the amount due from other funds or permitted the impounded funds to be so applied, but more concerning this later.

■ The statute being silent on the subject of interest, it is my thought that equitable principles should be invoked, and the Court should look at the equities involved in ascertaining the burden of interest to be charged. It does not appear that any bad faith was involved in the matter of the overcharges.

■ In considering the subject of interest as of today, it may be well to glance back at the history of the subject. Down through the centuries of development of our English Common Law, and until the reign of Henry VIII, usury and interest were synonymous terms and the exaction thereof was prohibited by law until 1545, when by 37 Henry VIII, c 9, the taking of 10% was allowed. Anything above that rate was forbidden. This may have been the result of the teachings of Calvin who reasoned that anything reasonable might be exacted without conflict with the teachings of holy writ. Later we find cases dealing with the subject in attempts to ascertain whether a given exaction was in

the nature of interest or exacted as a penalty. For present purposes it is sufficient to say that out of it all the all powerful arm of equity was developed, and today we find that when a statute, such as that under consideration here, fails to fix a rate of interest, equity permits the court to establish a reasonable rate in the light of all the circumstances.

Here both sides were working feverishly in the midst of war confusion, and largely in the dark as to actual costs and reasonable profits. The legislative hoppers were brimming with pending legislation, and no one knew what the future might produce, either in the legislative or economic field. While battles were still raging at the front the redetermination here took place. The subjects of renegotiation and redetermination are at once complicated and bewildering subjects. They are fraught with technicalities, not only in the realm of accounting, but also in the sphere of the law. On the dates with which we are here concerned, the whole subject was in the process of clarification by trial and error with appeals in the first instance, not to the courts, but only to the Tax Court of the United States. Whether to accept the rigors of a redetermination, or to take an appeal involved difficult studies by experts involving great outlay in time and money. It is not surprising, therefore, that in this case on appeal was taken, and defendants bowed to the findings made against them. Thus the defendants saved themselves time and expense, to be devoted to further the war effort, and the government likewise saved the time and expense incident to an appeal.

■ I am reasonably sure that defendants did not, and could not, enjoy a six percent return on the overpayments they received pending judgment against them. The impounding of a like sum, to that sued on here, was of no advantage to these defendants but enured as security to the government. With the foregoing in mind I lean to the view that the exaction of six percent interest in this case would fall into the classification of a penalty, and far in excess of an amount necessary to make the government whole. The government has

no difficulty whatever in borrowing money in the open market at from 1⅛th to 2½ percent, and there being nothing culpable in the conduct of these defendants, it is my thought that the interest rate here should run at 2½ percent from the date when the account became a sum certain and was truly stated, to wit:' from February 12, 1945. See the opinion of Judge McColloch in U. S. v. Clark, D.C., 72 F.Supp. 393, with which I am in full accord.

An order may be entered in conformity herewith.