### UNITED STATES v. BEST et al.
#### No. 4822.

United States Court of Appeals
First Circuit.
May 19, 1954.

John J. Cound, Atty., Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Jacob S. Temkin, U. S. Atty., Providence, R. I., and Melvin Richter, Atty., Department of Justice, Washington, D. C., with him on the brief), for appellant.

Edward C. Park, Boston, Mass., for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

On December 31, 1952, the United States filed in the district court a complaint against the members of a partnership under § 403(c) of the Renegotiation Act of April 28, 1942, as amended, 56 Stat. 245, 983, 57 Stat. 565, 58 Stat. 82, 50 U.S.C.A.Appendix, § 1191(c). Recovery of judgment was sought in the amounts of the net principal sums constituting "excessive profits" made by the defendants in the years 1943 and 1944, plus interest at 6 per cent from the respective dates fixed in the formal demands for payment issued by the War Contracts Price Adjustment Board. It is now conceded that the partnership, as a subcontractor under government contracts, was subject to renegotiation pursuant to the Act.

■ The answer of the defendants admitted liability for the net principal sums claimed, $7,129.20 for 1943, and $6,944.06 for 1944, or a total of $14,073.26; and consented to judgment for the plaintiff in said amount of $14,073.26 "together with such interest from such dates and to such dates as the Court may deem reasonable under the circumstances". After hearing, the district court on June 10, 1953, entered judgment for the plaintiff against the defendants jointly and severally, in the aggregate principal amount of $14,073.26 "plus interest at the rate of 3 percent per annum on the amount of $7,129.20 from August 11, 1950 to June 9, 1953, plus interest at the rate of 3 percent per annum on the amount of $6,944.06 from April 16, 1946 to June 9, 1953, plus Court costs." Plaintiff appealed from this judgment of June 10, 1953, on the ground that the district court erred in not allowing interest at 6 percent on the sum of $7,129.20 beginning to run from October 18, 1945 (the date fixed in the demand for payment issued by the Board in the matter of excessive profits for the year 1943), and in not allowing interest at 6 percent on the sum of $6,944.06.[1]

---

[1.] Technically, this is not quite what happened. After the entry of the original judgment of June 10, 1953, the United States on June 19, 1953, filed a timely motion for rehearing and for amendment of the judgment so as to allow the greater sums by way of interest. This motion for rehearing was denied by order of the district court on December 9, 1953. Plaintiff's notice of appeal, filed February 4, 1954, purported to be an appeal from the order of December 9, 1953, denying the motion for rehearing, rather than from the original judgment of June 10, 1953. But when a motion for rehearing is seasonably filed and entertained by the court, the time limited for appeal does not begin to run until the motion is disposed of. See Denholm & McKay Co. v. Commissioner, 1 Cir., 1942, 132 F.2d 243, 247. It is expressly so provided in Rule 73(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The common explanation for this well-settled rule is that when such a timely motion for rehearing is filed, the judgment does not take final effect for purposes of appeal until the motion is disposed of. Strictly, we think, the appeal should have been taken from the original judgment of June 10, 1953, not from the order denying the motion for rehearing. But appellant's intention is clear enough, and we treat the notice of appeal as intended to bring up for review the correctness of the original judgment. Appellees

Therefore the point to be decided on the present appeal is a narrow one, involving only the question of interest. Appellant's principal contention is that the district court erred in not applying the mandatory provision of a regulation issued by the War Contracts Price Adjustment Board. The issue has little, if any, practical public importance for the future, for in the Renegotiation Act of 1951 Congress has directly fixed the rate of interest and the time from which interest accrues. 65 Stat. 13–14, 50 U.S.C.A.Appendix, § 1215(b) (2).

The original Renegotiation Act made no statutory provision for the allowance of interest, nor did it contain any authorization for the issuance of administrative regulations. 56 Stat. 245. The amendment of February 25, 1944, 58 Stat. 78, which created the War Contracts Price Adjustment Board as the administrative agency, granted to the Board specific authority to issue regulations on certain limited subjects, not including interest. It conferred no general authority to issue such regulations as the Board might deem appropriate to effectuate the purposes of the Act. Nevertheless, the Board, on October 23, 1944, issued a regulation as follows, 9 F.R. 12847:

> "Interest at the rate of 6% per annum accrues upon the amount determined as excessive profits to be eliminated less the tax credit, if any, from and after the date fixed in the demand for payment."

It seems clear that this regulation as to interest was not authorized by the Act. Nor may the courts give weight to it as being in effect an interpretation of the Act by the agency charged with its administration, for the regulation could not by any stretch be viewed as interpreting any ambiguous statutory language.

Most of the courts of appeals which have had occasion to rule on the point have held that this regulation of the Board as to interest is invalid. United States v. Bonnell, 9 Cir., 1950, 180 F.2d 145, 148; United States v. Abrams, 6 Cir., 197 F.2d 803, certiorari denied 1952, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664; United States v. Wissahickon Tool Works, Inc., 2 Cir., 1952, 200 F.2d 936, 942; United States v. Edward Valves, Inc., 7 Cir., 1953, 207 F.2d 329, 333; Ring Construction Corp. v. United States, 8 Cir., 1954, 209 F.2d 668, 673–674. See also Sampson Motors, Inc., v. United States, 9 Cir., 1948, 168 F.2d 878, 879; United States v. United Drill & Tool Corp., 1950, 87 U.S.App.D.C. 236, 183 F.2d 998; United States v. Star Construction Co., Inc., 10 Cir., 1951, 186 F.2d 666, 669. Apparently the only circuit which has expressed a view to the contrary is the Third Circuit, in United States v. Philmac Mfg. Co., 1951, 192 F.2d 517. That decision laid stress upon the fact that, at the hearing in 1945 on a bill to extend the termination date of the Renegotiation Act, various persons called the attention of the committee to the existence of the aforesaid regulation establishing interest at the rate of 6 percent; yet Congress enacted the extension on June 30, 1945, 59 Stat. 294, 50 U.S.C.A.Appendix, § 1191(h), without doing anything about it. Thus, it is argued, the Congress gave tacit approval to the asserted exercise of power by the Board in prescribing the interest rate. This is a type of argument which, we think, is often overworked to an unrealistic degree. It is quite speculative what attention, if any, the members of the committee gave to the item of information brought out at the hearing with reference to the existence of the particular regulation. No comment on the matter was contained in the committee report to the full membership of the House. After all, the purpose of the brief bill was not to make a thoroughgoing revision of the Renegotiation Act but merely

---

suffer no prejudice in this treatment, since the time for taking an appeal from the judgment of June 10, 1953, did not begin to run until December 9, 1953, when the order was entered denying the motion for rehearing. The appeal filed on February 4, 1954, was therefore timely.

to amend one subsection so as to extend the termination date for one year. Considering the limited scope of the bill and the legislative history, we are not prepared to infer that the Congress intended, in passing the Act of June 30, 1945, to give its blessing to this interest regulation which had been issued by the Board. Further, it is significant to note that the Congress did not specifically deal with the subject of interest until it enacted the Renegotiation Act of 1951, 65 Stat. 7, 50 U.S.C.A.Appendix, §§ 1191, 1211 et seq. That Act for the first time granted to the Board a general power to "make such rules, regulations, and orders as it deems necessary or appropriate to carry out the provisions of this title." § 109. But it did not thereby give the Board power to fix the interest rate by regulation; for in § 105(b) (2) the Congress wrote in a flat statutory provision for interest at the rate of 4 percent per annum. The 1951 Act has no retroactive application to the case at bar.

When the Sixth Circuit decided the later case of United States v. Abrams, 1952, 197 F.2d 803, it expressly declined to follow United States v. Philmac Mfg. Co., supra. The United States applied for a writ of certiorari in the Abrams case, claiming a conflict with this decision of the Third Circuit; nevertheless the Supreme Court declined to review the case, 1952, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664. We think we should follow the great weight of authority in this matter, in accordance with the reasoning persuasively set forth in the opinion by Judge Allen in United States v. Abrams.

In the absence of any statutory provision or valid regulation prescribing the rate of interest to be allowed to the government in suing to recover "excessive profits", it has been generally agreed that interest may be allowed by the court as a discretionary matter. See the cases cited above. This conclusion is in accordance with Billings v. United States, 1914, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596; Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 61 S.Ct. 995,

85 L.Ed. 1361. In Board of Commissioners of Jackson County v. United States, 1939, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313, the Court said: "The cases teach that interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable." Whether the district court in the present case would have been justified in denying all interest we do not have before us, since the defendants did not take an appeal. But we are clear, and we hold, that under the circumstances presented in this record the district court committed no abuse of discretion in failing to make a larger allowance of interest than it did.

The statutory liability of contractors and subcontractors to pay over to the United States their "excessive profits", as defined in the Renegotiation Act, may perhaps be described as an indebtedness due the United States. But it is certainly not an ordinary debt, and it is not at the outset a debt liquidated in amount. The Act laid down the procedure for determining the amount due. Subsection (c) provided that, if the Board did not make an agreement with the contractor or subcontractor with respect to the elimination of excessive profits received, it should "issue and enter an order determining the amount, if any, of such excessive profits, and forthwith give notice thereof by registered mail to the contractor or subcontractor." 58 Stat. 82. Subsection (e) provided that any contractor or subcontractor aggrieved by such order of the Board might within 90 days file a petition with The Tax Court of the United States for a redetermination thereof. "Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency. The court may determine as the amount of excessive profits an amount either less than, equal to, or

greater than that determined by the Board. *A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo."* 58 Stat. 86. Italics added. In the absence of the filing of a petition with the Tax Court for redetermination of the amount of excessive profits, it was provided in subsection (c) that the order of the Board in such matter should be final and conclusive. 58 Stat. 83.

With reference to the year 1943, the War Contracts Price Adjustment Board, on October 3, 1945, issued its determination that the amount of the partnership's excessive profits for that year was $14,-979.00, and notice thereof was on the same day sent to the partnership by registered mail. This notice stated: "Demand is hereby made for the payment of the amount of such excessive profits to be eliminated less the tax credit, if any". The notice also stated that interest would accrue "at the rate of 6 percent per annum from and after 18 October 1945 on any amount due under such order and unpaid."

This so-called "demand" was not a demand for the payment of a specific sum of money. It did not call for the payment of $14,979.00, found to be the amount of excessive profits received by the partnership during 1943. If the partners on their individual returns for 1943 paid an income tax on their respective shares of these "excessive profits" received by the partnership, there would have to be an adjustment thereof consequent upon the elimination of the excessive profits; and in determining the net amount which the partners were required to pay the government under the Renegotiation Act, they were entitled, therefore, to a tax credit pursuant to § 3806(b) of the Internal Revenue Code, 26 U.S.C.A. § 3806(b). It was eventually determined that the aggregate tax credit so available to the partners here amounted to the sum of $7,849.80 for the year 1943. When this amount

was ascertained does not appear in the record, but it may have been months, or even years, after the aforesaid demand notice of October 3, 1945, issued by the Board, for there were necessarily complications in calculating the tax credits allocable to the respective individual partners; and also, for the year 1943, there was particular complexity due to the application of § 6 of the Current Tax Payment Act of 1943, 57 Stat. 145, 26 U.S.C.A. § 1622 note.

At any rate, the partners filed in the Tax Court a timely petition for redetermination of the amount of their excessive profits for the year 1943. Under the provision of law above quoted, this was "a proceeding de novo"; and, until the Tax Court made its decision, the amount of such excessive profits was not liquidated and determined. Without fault of the partnership, so far as appears, the Tax Court did not make its final decision in the matter until August 11, 1950, on which date it affirmed the determination which had been made in the Board order fixing the amount of the excessive profits for 1943. See also Lowell Wool By-Products Co. v. War Contracts Price Adjustment Board, 1951, 89 U.S.App.D.C. 281, 192 F.2d 405. The amount so found and finally determined by the Tax Court was, of course, subject to deduction on account of the tax credit, whatever it was.

Under the circumstances we do not think that the district court abused its discretion by starting the running of interest from August 11, 1950, the date of the Tax Court decision, instead of imposing an interest charge from October 18, 1945, the date fixed in the so-called demand for payment made by the Board.

So far as the year 1944 is concerned, the Board, on April 3, 1946, issued its determination that the partnership's excessive profits for 1944 amounted to $17,-454.00. On the same day the Board issued its formal demand for payment of the above amount "less the tax credit, if any"; and stated further in the notice that interest would accrue at the rate of 6 percent per annum from and after

April 18, 1946, on any amount due under the order and unpaid. Since the partnership did not challenge in the Tax Court this order of the Board, the district court provided in the judgment under review that interest at the rate of 3 percent on the net amount due for 1944, *viz.*, the sum of $6,944.06 ($17,454.00 minus the tax credit) should bear interest at 3 percent from and after April 18, 1946, the date fixed in the demand for payment. Appellant is satisfied with the district court's acceptance of this date of April 18, 1946, but complains that the rate of interest should have been 6 percent.

, Since the amount of interest was within the discretion of the district court, we think it clear that the court did not abuse its discretion in setting the rate of interest at 3 percent, as was held in United States v. Bonnell, 9 Cir., 1950, 180 F.2d 145, 148, and in United States v. Abrams, 6 Cir., 1952, 197 F.2d 803, 806.

As a matter of fact, the partnership sought, prior to the filing of the present complaint, to pay the government the net principal amount which had been determined to be due, *viz.*, $14,073.26, for the two years in question. It first made an offer by letter on July 18, 1951, to pay that amount, with interest at 3 percent from the respective dates claimed by the United States. Receiving no reply to this letter, counsel for the partnership on July 15, 1952, forwarded to the United States Attorney a check to the order of the Treasurer of the United States in the amount of $14,073.26. In an accompanying letter counsel stated: "The payment is of the principal amounts due only and is not to be applied in whole or in part in the payment of interest, but it is without prejudice with the right of the United States to sue for interest. As you know, whether interest is payable and at what rate is a matter in dispute." Under date of October 10, 1952, the United States Attorney replied that the Department of Justice was unwilling "to accept the check as a payment on principal, but will accept it as a pay-

ment on account." Counsel for the partnership promptly replied that he could not advise his clients to assent to the application of the check for $14,073.26 first to accrued interest "in view of the fact that the interest rates have not yet been determined." It appears from the answer to the complaint that this check is still physically in the possession of the United States. Under these circumstances it perhaps would not have been unreasonable for the district court to have held that interest should stop running from the date of one of these tenders. Instead of that, the district court provided for the running of interest through June 9, 1953, the day before the entry of its final judgment now on appeal. The partnership cannot complain of this, since it took no appeal from the judgment. But it is a factor that this court is entitled to take into account in reaching a determination that on the whole case the United States has no just complaint with the amount of interest awarded.

The judgment of the District Court is affirmed.