**HARTFORD NATIONAL BANK AND TRUST COMPANY, Trustee, and Philips Laboratories, Inc., Plaintiffs,**

v.

**E. F. DREW & CO., Inc., Defendant.**

Civ. A. No. 1470.

United States District Court
D. Delaware.
Oct. 24, 1960.

348

---

Arthur G. Connolly and Januar D. Bove, Jr. (of Connolly, Bove & Lodge), Wilmington, Del., for plaintiffs.

James M. Tunnell, Jr. (of Morris, Nichols, Arsht & Tunnell) and Ernest S. Wilson, Jr., Wilmington, Del., William J. Barnes, Stuart A. White, and Roger R. Phillips (of Fish, Richardson & Neave), New York City, for defendant.

LEAHY, District Judge.

On the opinions filed[1] each party has submitted proposed orders. Plaintiff's order contains the decisional factors discussed in the final opinion of the Court on the award and damages.[2] Defendant's order proposes the awarded amount should be lowered to exclude any damages based on defendant's sales of products containing Vitamin $D_3$ purchased from other parties on which a royalty had already been paid and received by plaintiff; and the proposed order of defendant recites plaintiff is only entitled as general damages for its infringement of the patent the sum of $48,769.59. Defendant's

---

1. Hartford National Bank and Trust Company v. E. F. Drew & Co., Inc., D.C. Del., 133 F.Supp. 648, affirmed 3 Cir., 237 F.2d 594; D.C.Del., 188 F.Supp. 353.

2. 188 F.Supp. 353.

order also proposes any item of allowance of interest should merely run from the date of this Court's award or judgment. Defendant's order likewise rejects plaintiff's proposed allowance of attorneys fees.

1. Since the filing of the opinion on July 26, 1960 on the damages awarded, a certain stipulation dated October 22, 1959, filed before the Special Master, has been brought to the attention of the Court. A reading of the Court's opinion will show 10% of defendant's total sales of Vitamin D₃ products was taken as a fair measure of plaintiff's general damages because, as stated, a precise or mathematical measurement was not available. The stipulation by both plaintiff and defendant discloses sales of products containing purchased Vitamin D₃ should not have been included in computing damages. Thus, the damage award in the amount of $358,082 should be reduced by $84,000. Such adjusted figure will be contained in the order to be filed.

2. Defendant's proposal as to the interest award is rejected. Plaintiff's is accepted, i e., interest will be allowed on the main award of damages at a rate to be discussed, infra, from the end of each calendar year in which defendant's sales were made, as part of the general damages for defendant's infringement of plaintiff's patent. While defendant argues the circumstances of this case are such there should be a refusal to award any interest, I do not pause to discuss the allowance of interest in the light of the infringement that has occurred in the instant case as viewed by this Court and the Court of Appeals under the circumstances of defendant's tortious conduct. The award of interest, here, is, however, not a punitive device. Allowed interest in this case represents damages for delay in payment and compensation for use of plaintiff's money that should have been included in withheld annual royalty statements which, of course, were never rendered by the infringer. In short, it is moratory interest and not contract or punitive interest.[3]

3. Plaintiff seeks a 6% interest. The statute[4] allows interest, but it fixes no rate. The damage award in infringement situations is "together with interest * * * as fixed by the court." Moratory interest as compensatory for delayed payments has been discussed before.[5] The rate of interest should not exceed a 4% award of prejudgment interest.[6] During the past 20 years a cheap-money period shows a downward trend of prejudgment interest rates on all federal and state claims. Compensatory character of the award has led to dissatisfaction with the habitual judicial application of the legal rate of 6%. Aside from contract interest setting the rate, or action involving a statutory rate, interest is not allowed, as such, but is simply an incident of the measure of the amount of damage caused by delay in payment, which obviously depends on the particular facts of each case.

References are made to money markets to determine rate of interest. As stated by one federal court (per Judge Paul): "I think it plain that to allow interest * * * at six per cent * * * would more than compensate the plaintiffs. It is a matter of common knowledge that for some years past, including this entire period, money has been available at substantially less than six per cent even to the ordinary borrower at banks; and similarly investments promising reasonable safety cannot be found

---

3. Rodgers v. United States, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3; Billings v. United States, 232 U.S. 261, 285, 34 S.Ct. 421, 58 L.Ed. 596.

4. 35 U.S.C.A. § 284.

5. Speed v. Transamerica Corporation, D.C. Del., 135 F.Supp. 176, 198 et seq.

6. Equitable considerations must weigh award of prejudgment interest. Cf. Superior Tube Co. v. Delaware Aircraft, D.C.Del., 60 F.Supp. 573; E. M. Fleischmann Lumber Co. v. Resources Corp., D.C.Del., 114 F.Supp. 843, for discussion of interest under Delaware law.

at such a rate."[7] After World War II, the Court of Claims began allowing 4% interest.[8] In Arkansas Valley Ry. v. United States, 68 F.Supp. 727, at page 730, 107 Ct.Cl. 240, the Court of Claims formalized its new approach and elaborated on the reasons underlying it (per Chief Justice Whaley):

"To make recovery sufficient to comply with the concept of just compensation the plaintiff claims an interest rate of six percent per annum, as the legal rate of interest in the State of Kansas. But there is no statute or rule fixing any particular rate to be allowed. Since the determination of just compensation under the Fifth Amendment is exclusively a judicial function, it is for the Court to fix upon the rate that it will allow. For some time this Court has, in view of low prevailing rates of interest, limited this rate to four percent."

Another federal law area in which allowance of interest less than 6% has been practiced is in suits to recover excess profits where the figure of 4% interest has been mentioned.[9] A number of Court of Appeals have sanctioned awards of interest less than 6%.[10] District Courts have also approved this development.[11] As early as 1914, state courts were departing from the 6% rate on prejudgment interest because it did not reflect the cost of money and overcompensated plaintiffs for the use of the amount withheld.[12] The same approach has been followed by federal courts in diversity cases.[13]

I have decided to make an interest award, but the award must be made based on the facts of the present case and "warrant the exercise of its [the court's] discretionary power". I shall set a rate of interest not exceeding 4% "in order to reach a fair and just result".

7. City of Danville v. Chesapeake & O. Ry. Co., D.C.W.D.Va., 34 F.Supp. 620, 638–639. See The New York Times, Oct. 23, 1960, Section 3, F1.

8. Schaffer v. United States, 60 F.Supp. 760, 104 Ct.Cl. 229; Walker v. United States, 64 F.Supp. 135, 105 Ct.Cl. 553.

9. United States v. United Drill & Tool Corp., D.C.D.C., 81 F.Supp. 171, 172, affirmed 87 U.S.App.D.C. 236, 183 F.2d 998.

10. United States v. Best, 1 Cir., 212 F.2d 743; Ring Construction Corp. v. United States, 8 Cir., 209 F.2d 668, 674; United States v. Edward Valves, Inc., 7 Cir., 207 F.2d 329; United States v. Abrams, 6 Cir., 197 F.2d 803, 806; United States v. Bonnell, 9 Cir., 180 F.2d 145.

11. United States v. Hopkins, D.C.N.D. Ohio, 95 F.Supp. 14, 16 ("3% interest would be better suited to modern times"); United States v. American Metal Co., D.C.N.J., 86 F.Supp. 533, 534–535 (2½% awarded because "defendants did not, and could not, enjoy a six percent return * * *"); United States v. Clark, D.C.Or., 72 F.Supp. 393, 394 (2½% awarded because defendants "should not be charged with higher interest than they have been able to earn on the money").
For still another example of a federal claim upon which 4% interest was allowed in conformity with the rates prevailing in "the money market in general", see R. F. C. v. Service Pipe Line Co., 10 Cir., 206 F.2d 814, 818.

12. John Agnew Co. v. Board of Education, 83 N.J.Eq. 49, 89 A. 1046, 1054–1055; Art Club of Philadelphia v. Heyman & Goodman, 325 Pa. 587, 190 A. 922, 925.

13. Sawyer v. E. F. Drew & Co., D.C.N.J., 113 F.Supp. 527, 528, affirmed 3 Cir., 209 F.2d 566. And see, Chesapeake & O. Ry. v. Elk Refining Co., 4 Cir., 186 F.2d 30, 36 A.L.R.2d 329.
In Austrian v. Williams, D.C.S.D.N.Y., 103 F.Supp. 64, the Court said:
"No attempt here is made to reach a precise amount of interest. In the Court's view, 4% more realistically reflects the overall rate of interest on private debts or the yield on investments during the period in question and is more consonant with an equitable and fair result." 103 F.Supp. at page 118.
"In making the disposition indicated herein, the Court does so, not on the basis of any equity existing in favor of the defendants in the case proper, but solely on the basis of economic factors during the period in question which warrant the exercise of its discretionary power in order to reach a fair and just result." Id., 103 F.Supp. at page 119.

4. The award of counsel fees will stand. Likewise the equal division of expenses for the Special Master will not be disturbed. The costs will, as usual, follow the judgment.

The order is entered herewith.